520 P.2d 1132

**STATE of Arizona, Appellee,**

v.

**·Larry Leroy WHITE, Appellant.**

**No. 2728.**

Supreme Court of Arizona,
En Banc.

April 15, 1974.

Rehearing Denied May 14, 1974.

Gary K. Nelson, Atty. Gen., Phoenix by John S. O'Dowd and Howard L. Fell, Asst. Atty. Gen., Tucson, Frank Leto, Third Year Law Student, for appellee.

Bernard L. Lesser, Tucson, for appellant.

HAYS, Chief Justice.

The defendant, Larry LeRoy White, has appealed from his conviction on the charge of assault with a deadly weapon, to wit, a gun, in violation of A.R.S. § 13–249. The brief filed in his behalf raises some five issues, but in view of our decision to reverse the conviction, we shall consider only one; namely, that the state failed to prove defendant's sanity beyond a reasonable doubt, after the issue was raised by the defense. The following facts are pertinent in our determination of the matter:

The defendant was charged with attempted murder, depositing dynamite in a

building with intent to injure the building or injure the persons in it, and assault with a deadly weapon on Lorraine Mueller. Prior to trial, he was committed to the State Hospital where he remained for over a year. Finally, he responded to treatment and was returned to stand trial, it having been determined that he was now able to assist counsel at his trial.

The testimony at the trial brought out some rather bizarre facts. The defendant entered a bar in the city of Tucson and sat down at a table. He had a gun in his hand and was holding a package of dynamite between his legs. He ultimately ordered a waitress to come and sit with him and thereafter fired the gun at the ceiling. He was then grabbed by police officers who had previously been summoned.

After the state rested, the defense called to the stand the psychiatrist under whose supervision the defendant had been at the State Hospital. He testified that the defendant, at the time of the offense, was unable to distinguish right from wrong and was insane under the M'Naghten rule. At the hospital, the defendant was diagnosed as having psychomotor epilepsy. A story of prior hospitalizations for mental problems, and previous personal difficulties appears in the record.

The defendant himself took the stand and related in some detail, although cloaked in vagueness, the events leading up to his arrest. He also testified as to his past emotional and mental problems.

In rebuttal to the defense's evidence on the question of sanity, the state called a medical doctor who specializes in psychiatry. He was one of the two doctors who had initially recommended that defendant be sent to the State Hospital. His testimony failed to contradict the testimony of the defense doctor. In effect, there was no testimony at the trial which rebutted the doubt raised as to the defendant's sanity. *See* Foster v. State, 37 Ariz. 281, 294 P. 268 (1930), State v. Martin, 102 Ariz. 142, 426 P.2d 639 (1967), and State v. Begay, 110 Ariz. 200, 516 P.2d 573 (1973).

The state, in support of the jury's verdict on the question of insanity, cites State v. Cano, 103 Ariz. 37, 436 P.2d 586 (1968). We believe the crux of the difference between the cited case and the instant case lies in this quotation from *Cano, supra*:

"In the instant case there was no previous history of mental aberration or abnormal conduct. Defendant Cano took the stand and related his version of the incident. From his own testimony it was abundantly clear that immediately before and after the act he not only knew the nature and consequences of his act, but that he was very much aware it was wrong. All of his actions were normal in that they might be expected of a person apprehended at the scene of a felony. Cano's childhood was quite unfortunate, but it was no worse than that suffered by a large number of people, of whom very few have become legally insane. Even this testimony did not go uncontradicted, as Fidencio Valdez denied having mistreated Cano in his youth." 436 P.2d at 591.

In our case, there is abundant evidence of previous mental problems and treatment therefor.

The judgment of conviction is reversed, and this cause is remanded for proceedings consistent with this decision.

CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.

STRUCKMEYER, Justice (dissenting).

I am in disagreement with the majority of the Court both as to the law and the facts of this case.

First, as to the law. On a criminal appeal after a conviction the court reviews the evidence in the light most favorable to sustaining the conviction, resolving all reasonable inferences in favor of the state. In so doing, it is accepted that the credibility of expert witnesses and the weight to be given their expert testimony is a jury question and the jury is not compelled to accept the uncontradicted opinion testimo-

ny of an expert. State v. Ganster, 102 Ariz. 490, 433 P.2d 620 (1967); State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965).

Justice Lockwood recently said in State v. Corley, 108 Ariz. 240, 242, 495 P.2d 470, 472 (1972):

> "Certainly an inference *may* arise in the minds of the jurors that defendant's expert evidence is true when uncontradicted, and the jury may properly find it true, but to instruct the jury that they are required to find it true as a matter of law would be an invasion of the jury's province. [Citing cases]"

Justice Udall said in State v. Ganster, *supra*:

> "The issue of criminal responsibility in Arizona has traditionally been a fact question for the jury. In addition, the credibility of expert witnesses and the weight to be given expert testimony has been a jury question in this state." 102 Ariz. 490, 493, 433 P.2d 620, 623;

for, as Justice Harlan said in Conn. Mut. Life v. Lathrop, 111 U.S. 612, 619, 4 S.Ct. 533, 536, 28 L.Ed. 536, 538–539 (1884):

> "Whether an individual is insane, is not always best solved by abstruse metaphysical speculations, expressed in the technical language of medical science. The common sense and, we may add, the natural instincts of mankind, reject the supposition that only experts can approximate certainty upon such a subject . . . the natural and ordinary operations of the human intellect and the appearance and conduct of insane persons, as contrasted with the appearance and conduct of persons of sound mind, are more or less understood and recognized by everyone of ordinary intelligence who comes in contact with his species."

In this case, the jury heard all the evidence, including the testimony of the defendant and of two eye witnesses present at the time, and from the whole picture concluded, as was its right, that defendant was sane beyond a reasonable doubt. This is alone enough to require an affirmance of the conviction on the issue of sanity, because, as stated, the jury is not required to blindly follow the opinion of an expert.

This brings me to my second ground for disagreement, which is that the majority have set aside the jury's judgment of the facts and in place substituted their own.

I think the conviction can be affirmed upon the testimony of the defendant alone. He testified that he had been sitting at the bar all evening until at one o'clock closing time. This question was then asked:

> "Q. Were you able to tell at one o'clock what was real and what wasn't?"

To which he answered:

> "A. Well, I hollered at—hollered or said, I don't know, to the bartender to call the police and tell them to hurry up and get there \* \* \*."

In Arizona, as in most states, to establish the defense of insanity it must be proved that the accused was laboring under such a defect of reason as not to know the nature and quality of his act, or, if he did know, that he did not know he was doing what was wrong. *See, e. g.*, State v. Macias, 60 Ariz. 93, 131 P.2d 810 (1942); State v. Triplett, 96 Ariz. 199, 393 P.2d 666 (1964); State v. Schantz, *supra*, 98 Ariz. 200, 403 P.2d 521 (1965), cert. denied 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966); State v. Griffin, 99 Ariz. 43, 406 P.2d 397 (1965); State v. Brock, 101 Ariz. 168, 416 P.2d 601 (1966); State v. Janovic, 101 Ariz. 203, 417 P.2d 527 (1966), cert. denied 385 U.S. 1036, 87 S.Ct. 777, 17 L.Ed.2d 683 (1967); State v. Bradley, 102 Ariz. 482, 433 P.2d 273 (1967), overruled on other grounds 106 Ariz. 386, 476 P.2d 841 (1970); State v. Corley, *supra*, 108 Ariz. 240, 495 P.2d 470 (1972); State v. Shaw, 106 Ariz. 103, 471 P.2d 715 (1970), cert. denied 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622 (1971). It is often said that the test is whether the accused could distinguish between right and wrong. State v. Triplett, *supra*; State v. Bradley, *supra*; State v. Malumphy, 105 Ariz. 200, 461 P.2d 677 (1969).

If the defendant just before he discharged his gun told the bartender to call the police, then beyond any equivocation he was able to distinguish between right and wrong. If he did not know that what he was doing was wrong, why call the police? Defendant was clearly aware of the criminality of his acts and the jury was justified in concluding that he was so aware.

The majority point out that the State called Phillip Greenbaum, a medical doctor who specialized in psychiatry. They state that "his testimony failed to contradict the testimony of the defense doctor." I think they treat Dr. Greenbaum's testimony much too cavalierly.

Dr. Greenbaum specialized in psychiatry for some 32 years. He examined the defendant on April 22, approximately three weeks after the commission of the offense. Dr. Greenbaum was asked whether he had developed an opinion through this examination as to whether the defendant had an appreciation of the nature and quality of his acts.

"Q. [By the Assistant County Attorney]: Well, do you think from the scope of your examination on April 22, 1971, whether or not he could form an opinion as to whether or not Mr. White had knowledge of the nature of his—nature and quality of his acts of April 3rd, 1971?

&ast; &ast; &ast; &ast; &ast; &ast;

THE WITNESS: Yes, I had an opinion.

Q. You had an opinion. What is that opinion, Doctor?

A. My opinion is that he had some delusional thinking and in his mind he thought that he could account for his acts, but this, colored by the delusions, and one can't accept them as being really knowledgeable.

[The Assistant County Attorney]: I understand. Thank you very much, Doctor. Your witness."

While Dr. Greenbaum did not at least directly answer the question of whether defendant had knowledge of the nature and quality of his acts, it is plain that he believed the defendant was suffering from delusional thinking. Although an accused may be laboring or suffering from some insane delusion or hallucination, still if he understands the nature and character of his actions the existence of such delusion or hallucination is not sufficient to relieve him from the responsibility for his criminal acts. Hashfield v. State, 247 Ind. 95, 210 N.E.2d 429 (1965), cert. denied 384 U. S. 921, 86 S.Ct. 1373, 16 L.Ed.2d 442 (1966); People v. Irwin, 166 Misc. 751, 4 N.Y.S.2d 548 (1938); State v. Nicholson, 1 Wash.App. 853, 466 P.2d 181 (1970). As the Supreme Court of California said in People v. Sloper, 198 Cal. 238, 245, 244 P. 362, 365 (1926):

> "'Although he may be laboring under partial insanity, as, for instance, suffering from some insane delusion or hallucination, still if he understands the nature and character of his action and its consequences—if he has knowledge that it is wrong and criminal, and that if he does the act he will do wrong—such partial insanity or the existence of such delusion or hallucination is not sufficient to relieve him from the responsibility for his criminal. acts.' People v. Willard, 150 Cal. 543, 89 P. 124. See, also, People v. Gilberg, 197 Cal. 306, 240 P. 1000; People v. Perry et al., 195 Cal. 623, 234 P. 890; People v. Williams, 184 Cal. 590, 194 P. 1019; People v. McCarthy, 115 Cal. 255, 46 P. 1073; People v. Hubert, 119 Cal. 216, 51 P. 329, 63 Am.St. Rep. 72; Marceau v. Travelers' Ins. Co., 101 Cal. 338, 35 P. 856, 36 P. 813; People v. Hoin, 62 Cal. 120, 45 Am.Rep. 651; People v. Pico, 62 Cal. 50; People v. Coffman, 24 Cal. 230; People v. Hobson, 17 Cal. 424; 7 Cal.Jur. 862, 863."

And *see, also,* People v. Jackson, 105 Cal. App.2d 811, 234 P.2d 261 (1951).

Because the jury could believe that the defendant was suffering from delusional thinking which did not affect his ability to distinguish between right and wrong, it is my opinion that `the defendant could be

**512**

found legally sane at the time of the commission of the offenses with which he was charged.

For the foregoing reasons, it is my opinion that the majority of this Court have invaded the province of the jury and accordingly, I dissent.