MARTIN WAYNE BRADBERRY v. STATE OF INDIANA.

(No. 576S150. Filed July 21, 1977. Rehearing denied September 21, 1977.)

Mark Peden, Foley, Foley & Peden, of Martinsville, for appellant.

Theodore L. Sendak, Attorney General, Susan J. Davis, Deputy Attorney General, for appellee.

PIVARNIK, J.—After a conviction in Morgan Superior Court for assault with intent to kill and commission of a felony while armed, appellant Bradberry was sentenced to ten years imprisonment. These convictions were reversed. Bradberry v. State, (1974) 160 Ind. App. 202, 311 N.E.2d 437. Appellant was retried, convicted of assault with intent to kill on October 13, 1975, and sentenced to fifteen years imprisonment. This conviction and sentence is the subject of this appeal.

Bradberry argues nine errors in the proceedings of his trial below: (1) that he did not knowingly and intelligently waive his right against double jeopardy by appealing his first conviction; (2) that the court did not comply with his motion for an early trial; (3) that the court should not have allowed the prosecutor and defense counsel to stipulate for selection of a new panel of judges; (4) that the court's manner of conducting voir dire of the jury was too severe; (5) that the court should not have questioned prospective jurors on their exposure to news reports in the presence of other prospective jurors; (6) that the court should have allowed him to personally conduct cross-examination; (7) that his motion for mistrial should have been granted; (8) that the evidence was insufficient; (9) that there are errors relating to the fact that the second sentence was more severe,

## I.

Appellant's first argument is that he did not knowingly and intelligently waive his right against double jeopardy by taking an appeal after his first conviction. In essence, the argument is that appellant did not know that he could receive a longer sentence after a successful appeal and retrial. Appellant recognizes that an appeal after a criminal conviction has been held to be a waiver of all questions of former jeopardy. *Layton* v. *State*, (1968) 251 Ind. 205, 212, 240 N.E.2d 489, 493. Further, the United States Supreme Court has noted that it has "implicitly rejected the contention that the permissibility of a retrial following a mistrial or a reversal of a conviction on appeal depends on a knowing, voluntary, and intelligent waiver of a constitutional right." *United States* v. *Dinitz*, (1976) 424 U.S. 600, 609-610 n.11, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 275. We thus find appellant's first contention to be without merit.

## II.

The relevant events surrounding appellant's motion for an early trial, pursuant to Ind. R. Crim. P. 4(B), are as follows. On July 30, 1974, appellant filed a motion for change of judge. This motion was granted in August, 1974, and no judge had yet been found when appellant moved for an early trial on December 2, 1974. On December 11, appellant moved for the selection of a new panel of judges from which to strike, and both parties then stipulated to such new panel. The trial judge who presided in this case was finally appointed on January 24, 1975. On March 6, 1975, appellant filed a motion for discharge for failure to bring to trial within seventy days and said motion was overruled the same day.

Ind. R. Crim. P. 4(F) provides that when a delay is caused by defendant's act, Rule 4 time limitations shall be extended by the amount of the resulting period of such delay. Determination of what amount of delay is attributable to defendant's actions must be decided on a case by case basis. *Gross* v. *State*, (1972) 258 Ind. 46, 278 N.E.2d

583. Appellant here argues that since his first conviction was reversed for failure to hold a hearing on a prior motion for change of judge, *Bradberry* v. *State*, (1974) 160 Ind. App. 202, 311 N.E.2d 437, such error in the first trial was not his fault. Appellant also argues, with respect to the various exigencies involved in finding a judge in this case, that these were attributable to prospective judges rather than himself. It does not matter, however, that the defendant's acts which caused delay were justifiable or meritorious, since it is not the motive of defendant's actions, but rather their effect that determines whether the delay is chargeable to him. This rule has been applied in cases involving defendant's motions for change of judge, since such motions set in motion a chain of events which is not complete until the special judge qualifies and assumes jurisdiction. *State* v. *Grow*, (1970) 255 Ind. 183, 263 N.E.2d 277; *State* v. *Moles*, (1975) Ind. App., 337 N.E. 2d 543. Therefore, the trial judge here properly found that appellant was not entitled to a discharge, since delays were caused by appellant within the meaning of Ind. R. Crim. P. 4(F).

## III.

Appellant Bradberry further contends that the trial judge should not have allowed his own attorney and the prosecutor to stipulate to the appointment of a third panel of judges from which to strike. The argument is that such stipulation was in violation of Ind. R. Crim. P. 13(10), because a failure to find a special judge after the appointment of two panels and striking therefrom necessitates certifying the facts to the Supreme Court for a special judge appointment. Appellant ignores the fact that it was his own motion for the appointment of a new panel on December 11, 1974, which led to the agreement between his own counsel and the prosecutor for appointment of a third panel. Instead of focusing on his own initiation of and acquiescence in this alleged error, appellant asserts that he was prejudiced. Such prejudice is said to stem from the fact that the judge who appointed the third panel established his own prejudice by granting the

original change of judge motion of defendant. The initial inconsistency of appellant's position is thus supported by a second inconsistency: that a judge shows his bias to a defendant by granting a motion made by defendant. Finally, appellant cites no authority. The absence of a discernible argument and cited authority here precludes review. *Ballard* v. *State*, (1974) 262 Ind. 482, 318 N.E.2d 798.

## IV.

The trial judge in this case announced that he would conduct voir dire of the prospective jury, stating that counsel could submit supplementary questions in writing. Of the questions submitted by defense counsel, a few were rejected or modified by the court. Counsel were not permitted to orally voir dire the jury. Appellant claims that this procedure was erroneous, but does not state how he was harmed by the questions asked by the court or why the minor inconsistencies between his rejected questions and the court's are significant. Because of the trial court's broad discretionary power to restrict voir dire to proper matters, by regulating the interrogation's form and substance, procedures such as that employed in the present case have been upheld. *Tewell* v. *State*, (1976) 264 Ind. 88, 339 N.E.2d 792; *White* v. *State*, (1975) 263 Ind. 302, 330 N.E.2d 84. We find that these cases are controlling on this issue, and hence there is no error in the court's general conduct of voir dire.

## V.

With relation to the trial court's conduct of voir dire, appellant further contends that questions about alleged newspaper coverage of the crime in question should have been asked to prospective jurors separately, outside the presence of the others. The record demonstrates that although some prospective jurors told the court that they had read about the case, they also stated that they had formed no opinion as a result. One prospective juror, who was dismissed by the court for cause, stated that he had "read in the paper" about

the case and formed an opinion, but did not say what that opinion was. Further, the voir dire of these prospective jurors did not elicit any statements from them concerning facts of the crime in issue or what the newspaper said, only general statements to the effect that there was a newspaper story about it. The newspaper story has not been preserved in the record.

Unlike the case of *Lindsey* v. *State*, (1973) 260 Ind. 351, 295 N.E.2d 819, no specific publicity was brought to the attention of the court here. Another distinguishing factor is that *Lindsey* involved a question of such publicity affecting a jury already impanelled in the course of a trial. Here, some prospective jurors merely recalled reading about the alleged offense during voir dire. The gist of appellant's argument is that these general references of prospective jurors to the existence of a news story, without any recitation of the contents of such story or the effect of it on their own opinions, necessitated the questioning of each prospective juror separately. We cannot agree, since the record shows nothing in the voir dire which could have prejudiced other prospective jurors who were present.

## VI.

During trial, the appellant twice attempted to supersede his attorney and personally conduct cross-examination of a prosecution witness. The court denied both of these requests. Appellant now claims that his right to represent himself pursuant to *Faretta* v. *California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, was violated. Appellant also asserts that *Faretta* stands for a right to supersede his attorney.

The *Faretta* decision addressed itself to situations where the state forces counsel on a defendant against his considered will. It has no application here. The United States Supreme Court in *Faretta* recognized that when a defendant consents at the outset to accept counsel as his representative, "law and tradition may allocate to the

counsel the power to make binding decisions of trial strategy in many areas." 422 U.S. at 820-21. This language demonstrates that where, as here, defendant originally consents to representation by counsel, the constitutional problem addressed by the court is satisfied. Where defendants attempt a sort of "hybrid representation" after this point, representing themselves as co-counsel along with their attorneys, the question is one in which the trial judge exercises wide discretion because no constitutional right to hybrid representation exists. *Cf. United States v. Gaines*, (N.D. Ind. 1976) 416 F. Supp. 1047. The trial court properly exercised its discretion here, and no error is presented on this issue.

## VII.

During examination of a Court Reporter for the purposes of demonstrating the custody and control of certain evidence, the prosecutor made two references to a prior "trial." The trial judge also made a reference to a transcript from a previous "trial" during a short colloquy regarding the admissibility of such transcript, which contained the testimony of a witness absent from the second trial. Appellant moved for a mistrial on the basis of these references, which was denied. The trial judge offered to admonish the jury, but the defendant waived admonishment.

The decision to grant or deny a motion for mistrial lies in the sound discretion of the trial court, and is reviewable solely on the question of abuse thereof. *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798. Appellant attempts to argue abuse with a citation to *Chaffin v. Stynchcombe*, (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714, which held that a harsher sentence given by a jury upon retrial will be upheld if the jury was unaware of the previous *sentence* given in the former trial. By arguing that knowledge of a former trial is knowledge of the former sentence, appellant completely misconstrues *Chaffin*. In *Chaffin*, as in the present case, the jury heard a reference of a witness to a former trial but did not know anything about

the former conviction or sentence. The court stated that it does not follow, from a jury's knowledge of a former trial, that the jury knows whether such former trial was on the same charge and whether there was a conviction. 412 U.S. at 26. Given the ambiguity and inadvertence of the references to the former trial here, and the holding in *Chaffin*, we find no abuse of discretion in the trial court's denial of the motion for mistrial.

## VIII.

Appellant Bradberry challenges the sufficiency of the evidence to support his conviction of assault with intent to kill. The testimony of a police deputy in the present case ▮ was that as he attempted to apprehend a green Mustang, many shots were fired back from the right side of the Mustang. The officer was certain that the first shot was fired in his direction; after this point gunfire was exchanged during a chase. Another witness testified that he saw appellant Bradberry in the passenger seat of the green Mustang. Looking at the evidence most favorable to the state and the reasonable inferences to be drawn therefrom, we thus find substantial evidence of probative value from which the trier of fact could reasonably infer that Bradberry was guilty of assault with intent to kill beyond a reasonable doubt. *Matthew* v. *State*, (1975) 263 Ind. 672, 337 N.E.2d 821, 822. The element of intent to kill is inferred from the use of a deadly weapon in a manner reasonably calculated to cause death. *Liston* v. *State*, (1969) 252 Ind. 502, 250 N.E.2d 739.

## IX.

Finally, appellant makes two challenges to the fact that he received a more severe sentence on his retrial after appeal than in his first trial. First, he argues that if a greater sentence is given after the second trial, then the reasons for this must appear in the record pursuant to *North Carolina* v. *Pearce*, (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. Second, he argues that since a greater sentence can result

after a successful appeal and retrial, but not after a successful pursuit of post-conviction relief, there is a violation of the equal protection clause of the fourteenth amendment to the Constitution of the United States.

The fifteen year sentence in this case was given by the jury at the time they found appellant guilty. The rule of *North Carolina* v. *Pearce* does not apply to jury sentencing on retrial, as distinguished from a judge's sentencing after retrial. *Chaffin* v. *Stynchcombe,* (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714. Appellant's first challenge to his higher sentence is thus without merit.

The *Pearce* case itself dealt with an equal protection challenge to the possibility of higher sentences after successful appeals and retrials. The argument was that there were two classes: those defendants who appealed and could risk higher sentences after new trials, and those defendants who did not appeal. Responding to this, the United States Supreme Court stated that the concept of "classification" necessary for equal protection analysis cannot be said to be involved here. Results after wholly new trials "may depend upon a particular combination of infinite variables peculiar to each individual trial," and there is no rational way to state that this process includes a state "classifying" defendants. *Pearce,* 395 U.S. at 722-23.

Unlike retrials after successful appeals, the inquiry during post-conviction relief is more limited in scope. Only specific errors presented by the defendant are considered, rather than the "infinite variables" possible when the state must prove a defendant's guilt at trial. Pursuit of post-conviction remedies is not a substitute for direct appeal, *Garr* v. *State,* (1974) 262 Ind. 134, 312 N.E.2d 70, *construing* Ind. R. P.C. 1, 1(b). While new trials may result after post-conviction hearing, this is only one remedy among several which can be ordered. The provision that higher sentences cannot be imposed after successful post-conviction pursuit is a recognition that defendants should not be impeded when they initially seek only a narrow scope of

review. Further, post-conviction remedies are available to any defendant, whether or not he has previously appealed. Thus the post-conviction rules do not create a separate remedy for a separate class from appealers. There is thus no merit in appellant's equal protection challenge.

The judgment of the trial court is affirmed.

ALL JUSTICES CONCUR.

NOTE.—Reported 364 N.E.2d 1183.