Roger LYNN, Appellant,

v.

STATE of Indiana, Appellee.

No. 777S499.

Supreme Court of Indiana.

July 25, 1979.

Rehearing Denied Sept. 19, 1979.

George K. Shields, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant Lynn was found guilty of first-degree murder at the conclusion of a jury trial in the Marion Criminal Court on February 10, 1977. He was sentenced to life imprisonment.

Four errors are asserted in this appeal: (1) whether the trial court unreasonably limited voir dire of the jury; (2) whether the trial court erred in giving certain instructions tendered by the state; (3) whether the trial court erred in refusing certain instructions tendered by appellant; (4) whether the verdict was supported by sufficient evidence.

## I.

Appellant first argues that the trial court's allegedly unreasonable limits on voir dire of prospective jurors amounted to a denial of due process of law. The asserted basis of this claim is that prospective jurors were not adequately questioned on the appellant's defense of insanity.

The record shows that the jury in this trial was selected from three panels of prospective jurors, with voir dire limited by the trial court to twenty minutes for each side. Much of the voir dire was personally conducted by the trial court. Appellant did question the first two panels of prospective jurors about the insanity defense, but not the third. Appellant's time had run out by this point. About midway through the en-

tire procedure, however, appellant's trial counsel had asked that, in view of "the severity of the crime and the complication of the defense," that he not be restricted to twenty minutes. The court replied at this time that if counsel was "on to something that requires further questioning they may be submitted in writing to the Court." The record does not reflect that written questions were ever submitted to the trial court by defense counsel. Further, the record shows that after all the jurors had been impanelled, appellant accepted them, including the ones he had not personally questioned. After this acceptance, appellant made motions to strike the full panel and for a mistrial, outside the jury's presence and hearing. The trial court overruled these motions.

█ ██ The trial court has broad discretionary powers to regulate the voir dire's form and substance. *Roberts v. State,* (1978) Ind., 373 N.E.2d 1103, 1106; *Bradberry v. State,* (1977) 266 Ind. 530, 364 N.E.2d 1183, 1186. On a set of facts nearly identical to the present case, this court upheld a twenty-minute time limit on voir dire in the case of *Hart v. State,* (1976) 265 Ind. 145, 352 N.E.2d 712. In that case, as here, the parties were allowed to supplement the voir dire of the judge by submitting written questions which the judge could use in his discretion. *Id.,* 352 N.E.2d at 716–17. We thus find that the voir dire in the present case was properly conducted, and was not a denial of due process.

## II.

█ It is next argued that two final instructions tendered by the state were erroneously given, which allegedly singled out and commented on the testimony of certain witnesses. State's instruction no. 2, objected to by appellant, read as follows:

"In the course of the trial there has been introduced the testimony of several witnesses who are referred to as expert witnesses. You are instructed that an expert is one who is presumed to have special qualifications in his profession or vocation by reason of education, training and experience. You are to weigh the testimony of an expert witness in the same manner as you do the testimony of any other witness, taking into consideration the probability of the truth of which he speaks, together with the facts from which he draws his conclusions."

The other instruction in question, state's instruction no. 3, stated:

"Among the witnesses who have appeared before you are some who have testified as expert witnesses. You are not required to take the opinions of expert witnesses as binding upon you, but these opinions are to be used by you to aid in your deliberations. The testimony of experts is received as that of persons who are supposed to be learned by reason of special study, investigation, or experience along lines not of general knowledge, and their conclusions may be of value to you. You may adopt, or not, their conclusions, according to your own best judgment, giving to them in each instance such weight as you think should be given under the circumstances."

These two instructions are correct statements of the law. They do not constitute comments on singled out witnesses. They were properly given by the trial court, and there is no error presented concerning them.

## III.

█ Appellant asserts that the trial court erred in refusing two final instructions tendered by appellant. Defendant's instruction no. 2, rejected by the trial court, stated:

"You are hereby instructed that under a plea of not guilty by reason of insanity the defendant is not required to prove his insanity. The entire burden is upon the State to prove the defendant was sane at the time of the offense beyond a reasonable doubt."

The other rejected instruction, defendant's instruction no. 3, stated:

"You are hereby instructed that if from all the evidence in the case, there exists a reasonable doubt of the sanity of the

accused at the time of the commission of the crime, he should be acquitted."

As a result of the failure to give these instructions, appellant claims that the jury was not properly instructed on the state's burden of proof on the insanity issue. The trial court's refusal to give these instructions was assertedly based on the belief that their substance was covered by other instructions. The court did instruct the jury with common "boilerplate" definitions of both reasonable doubt and insanity. The court also gave a preliminary instruction which stated, in part, in relation to the insanity defense:

"Under this special plea and denial the State of Indiana has the burden to prove to each juror beyond a reasonable doubt that the defendant was sane at the time of the alleged act."

Further, the trial court gave the following final instruction on this question:

"You are hereby instructed that in a criminal case wherein the sanity of the Defendant is at issue the State must prove the defendant sane beyond any reasonable doubt to each and every one of you. If the State proves beyond a reasonable doubt that the Defendant committed the act or acts alleged in the Indictment but the State fails to prove the sanity of Roger Lynn beyond a reasonable doubt you should find the defendant not guilty by reason of Insanity."

It is not error to refuse instructions, the substance of which is covered by other instructions. *Murphy v. State,* (1977) Ind., 369 N.E.2d 411, 417. There is thus no error presented on this issue.

## IV.

■ Appellant finally challenges the sufficiency of the evidence supporting his conviction of first degree murder. On review we treat this question the same in insanity defense cases as in others. *Sypniewski v. State,* (1977) Ind., 368 N.E.2d 1359, 1363–64. Following the presentation of the State's evidence, the appellant moved for judgment on the evidence on the grounds the State had offered no evidence to prove he was sane beyond a reasonable doubt. This motion was overruled and the appellant offered evidence in his defense. At the close of all of the evidence, he again moved for judgment, which was again overruled and finally raised the same question in his Motion to Correct Errors which was also overruled by the trial court.

At the time of this incident, Lynn and his wife lived in an upstairs apartment at the home of his mother and great-aunt. It was to this apartment that he invited his friend, Orville Baker, whom he then killed in accordance with a plan he had devised earlier. He shot Orville once, in the chest, and then again, in the head, with a high-powered rifle. It was Lynn's belief that this method of killing would end the suffering of life in as painless a way as possible. He had indicated, in a tape recording made before the killing, that he intended to do this and then shoot himself. On the tape, he recited a poem he had written about the incident, some Bible verses and some of his own philosophy on death. After the killing, Lynn went out to a levee behind his home where he had planned to take his own life, but changed his mind and did not shoot himself. When the police came to arrest him he surrendered the gun to them, telling them, "I did it, I did it." He also gave them a piece of paper on which he had written out a confession detailing the killing. This confession was written prior to the shooting. He later gave the police an additional oral confession setting out all the details of the incident.

The appellant's evidence consisted mainly of statements from members of his family who testified about his family life and behavioral patterns during his lifetime. They recounted many incidents during his life which exhibited abnormal conduct and attitude.

After all of the evidence, the two court appointed psychiatrists, Dr. Ronald Hull and Dr. Dwight Schuster, were called to testify. Dr. Schuster testified that after his examination, he was of the opinion that because of a mental disorder then in existence, Roger Lynn was unable to conform

his behavior to the requirements of the law. Dr. Ronald Hull testified that after his examination it was his opinion that, due to a mental defect, Roger Lynn lacked the capacity to appreciate the wrongfulness of his actions at the time of the alleged crime and further that Lynn also lacked substantial capacity to conform his behavior to the law.

 Lay testimony, including opinions, is competent on the issue of sanity, *Williams v. State,* (1976) 265 Ind. 190, 352 N.E.2d 733–742, as is all evidence which has a logical reference to defendant's sanity, including his sobriety and behavior on the day of the offense. *Howard v. State,* (1976) 265 Ind. 503–507, 355 N.E.2d 833–835. At the time of appellant's trial the State was required to carry the burden of proving that the accused was sane at the time of the alleged offense. *James v. State,* (1976) 265 Ind. 384, 354 N.E.2d 236–242; and *Hill v. State,* (1969) 252 Ind. 601, 251 N.E.2d 429–436. It could accomplish this task by proving to the satisfaction of the trier of fact, beyond a reasonable doubt, either that the accused was not suffering from a mental disease or defect or that the accused had substantial capacity to appreciate the wrongfulness of his conduct and was capable of conforming his conduct to the requirements of the law.

 The jury heard the following evidence. As a small child, Lynn physically assaulted people and animals and was not chastised for it. As he grew older, these episodes continued and people became afraid of him and considered him mean and violent. As a freshman in high school, he was bright, but chose to quit school and was not pressured by adults in his family to return to school. At age seventeen he married. He held several good jobs and was never fired from any of them, but quit simply because he did not like the work.

As his thoughts turned to sexual matters, he fantasized about them and about death. He was subject to periods of depression and boredom. He frequently resorted to concocting and carrying out child-like plans which involved his exercise of authority over others. Six months prior to this kill-

ing, he bought an M–1 rifle. He planned to shoot his wife and then commit suicide. He, in fact, took a shot at her. He missed intentionally and never harmed himself. Thereafter, upon the suggestion of his wife, he visited a psychiatrist.

Finally, at age nineteen, while unemployed and in a state of depression, he planned, in great detail, the murder of his victim, to whom others referred as his "best friend." He made a record of such activities. He then carried out that plan but obviously did not commit suicide as he claims to have planned. Instead, he called the police. When they arrived, he walked toward them with the gun up over his head. A neighbor yelled at him and asked him what he was doing and appellant told this person to get back or he would get a bullet in the brain. There is direct evidence that appellant was aware of what was occurring during each step of this planned killing.

The jury could have concluded that appellant was subject to fits of depression, or that he had emotional difficulties and sexual maladjustments. They could have concluded he was childlike, immature and emotionally undeveloped and had a personality disorder. Yet, the jury was warranted in concluding beyond a reasonable doubt that either such conditions were not manifest in him to such a degree as to constitute a mental disease or defect, or that he had substantial capacity to appreciate the wrongfulness of his conduct and was capable of conforming his conduct to the requirements of the law.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, J., concur.

PRENTICE, J., dissents with opinion in which HUNTER, J., concurs.

PRENTICE, Justice, dissenting.

I dissent to issue number 4, which is a challenge to the sufficiency of the evidence of the defendant's sanity at the time the criminal act was committed. In so doing I

pass no judgment upon the issue that was before the jury, i. e. whether nor not the defendant was insane under the rule laid down in *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429; nor would I in any way alter that rule or change the requirements of evidence, quantitatively or qualitatively to withstand a sufficiency challenge upon appeal.

The criminal acts of the defendant were bizarre, but this does not preclude his having been sane under the *Hill* test. However, neither does the commission of crimes, standing alone, evidence sanity; although the manner in which the criminal acts are performed and the conduct of the actor may evidence either.

The State amply proved that the defendant committed the criminal acts charged. The defendant rested, without testifying himself, after introducing considerable evidence of his insanity, as set forth in the majority opinion. *The State offered no evidence to rebut such evidence of insanity.*

I find no prior Indiana cases where a conviction has been reversed because of the insufficiency of evidence of the defendant's sanity. It is clear, however, that once the issue of sanity has been properly raised and competent evidence of probative value has been introduced evidencing a defendant's insanity at the time the criminal acts were committed, the burden is upon the State to prove, beyond a reasonable doubt, that the defendant was sane. *Johnson v. State*, (1970) 255 Ind. 324, 264 N.E.2d 57; *Flowers v. State*, (1956) 236 Ind. 151, 139 N.E.2d 185.

A substantial number of cases from other jurisdictions have been reversed by reason of the State's failure to meet this burden. *State v. White*, (1974) 110 Ariz. 508, 520 P.2d 1132; *People v. Silver*, (1974) 33 N.Y.2d 475, 354 N.Y.S.2d 915, 310 N.E.2d 520; *United States v. Bass*, (5th Cir. 1974) 490 F.2d 846; *Bishop v. United States*, (5th Cir. 1968) 394 F.2d 500; *Farrell v. State*, (Fla.1958) 101 So.2d 130; *Douglas v. United States*, (1956) 99 U.S.App.D.C. 232, 239 F.2d 52; *People v. Skeoch*, (1951) 408 Ill. 276, 96 N.E.2d 473; *Handspike v. State*, (1947) 203 Ga. 115, 45 S.E.2d 662; *Britts v. State*, (1947) 158 Fla. 839, 30 So.2d 363; *Graham v. People*, (1934) 95 Colo. 544, 38 P.2d 87.

At least one case suggests that the outcome might have been different had the defendant testified; but that as he did not, the jury had no opportunity to form an opinion concerning his sanity, based upon his appearance and demeanor upon the witness stand and the coherence or incoherence of his testimony. *Graham v. People, supra.*

I question the wisdom of relying upon such appearances under the *Hill* test, however, where the defendant's ability to conform his conduct may be a determinative factor as well as his appreciation of the wrongfulness of his act.

In considering the issue of sanity, the jury is not confined to the opinions of the witnesses, expert or lay. *Riggs v. State*, (1976) 264 Ind. 263, 342 N.E.2d 838; *Moore v. State*, (1973) 260 Ind. 154, 293 N.E.2d 28. They may rely upon their own judgment based upon the facts in evidence, *Johnson v. State, supra*, which would include, the acts of the defendant, before and after the commission of the crime, as well as during its progress, provided they were not too remote to be relevant. However, if such evidence is to be sufficient, it may not merely be consistent with a hypothesis of sanity but must be inconsistent with the hypothesis of insanity.

There is no conflict in the evidence, and, as we said in *Teague v. State*, (1978) Ind., 379 N.E.2d 418, in a sufficiency of the evidence review, " * * * we consider only the evidence most favorable to the state together with all logical and reasonable inferences which may be drawn therefrom. If, from that viewpoint, we find substantial evidence of probative value from which the trier of fact could have reasonably inferred that the defendant was guilty beyond a reasonable doubt, the conviction may not be disturbed."

" * * * in our review, we must also accommodate for possible unreasonableness of the fact finder's verdict, otherwise our review would be but a sham and a useless exercise in futility. If the infer-

ence drawn by the trier of facts must rest upon speculation or conjecture, it cannot be drawn beyond a reasonable doubt, and we are required to set it aside. 'It is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion or amount to a scintilla.' *Baker v. State*, (1956) 236 Ind. 55, 60, 138 N.E.2d 641." *Shutt v. State*, (1977) Ind., 367 N.E.2d 1376, 1378.

This is not to say that upon appellate review the evidence must exclude every reasonable hypothesis of innocence in order that a verdict of guilty be affirmed. On the contrary, " * * * where there are two reasonable inferences arising from the circumstantial evidence in a case, one of guilt and another of innocence, it is not the duty or right of this court to reverse simply because we might believe the circumstances do not exclude every reasonable hypothesis of innocence." *Ruetz v. State*, (1978) Ind., 373 N.E.2d 152, 157. But, " * * * a reasonable inference of guilt, sufficient to base a conviction upon, must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." *Ruetz v. State, supra.*

The foregoing rules of appellate review are applicable in all cases. They do not change with the circumstances of the case. Therefore, if the defendant's sanity has been placed in issue, as it was in this case, by the introduction of substantial evidence of probative value of his insanity, the burden fell upon the State to prove that the defendant was sane under the *Hill* test, at the time he committed the criminal acts; and such burden could be sustained only by substantial evidence of probative value from which a reasonable trier of fact could infer such sanity, beyond a reasonable doubt. By failing to rebut directly the evidence of insanity, the trier of fact was left to infer the defendant's sanity from his actions in the commission of the criminal acts. True, they might have been the actions of a sane man. Just as true, however, they might have been the actions of a man insane under the *Hill* test. From this point of view it requires conjecture to draw an inference of the defendant's sanity and hence his guilt. As such, the evidence can support only a suspicion of guilt and not an inference thereof that could be drawn by a reasonable man beyond a reasonable doubt.

In my judgment the holding of the majority is the equivalent of placing the burden upon a defendant to prove his insanity, if that be his defense. To do so may well be advisable and without constitutional impediment, but it has not heretofore been the law of this state.

It has recently been determined by the Supreme Court of the United States that a defendant obtaining a reversal of his criminal conviction by reason of the insufficiency of the evidence may not be re-tried. *Burks v. United States*, (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. I do not interpret that case as requiring us to order that the defendant be discharged. It is clear from the record that the defendant committed the criminal acts charged, and the jury so found, beyond a reasonable doubt. The only impediment to the conviction is the absence of substantial and probative evidence of his sanity at that time. The jury could have arrived at one of four verdicts: not guilty, guilty as charged, guilty of a lesser, necessarily included offense or not guilty by reason of insanity. The verdict rendered, together with a record of substantial probative evidence supportive of it, logically precludes an order of dismissal; and a verdict of guilty is precluded by the absence of evidence of criminal responsibility. This leaves "not guilty by reason of insanity" as the only tenable result of the trial.

In *Burks v. United States, supra*, the Supreme Court stated that had the District Court ruled properly, a judgment of acquittal would have been entered pursuant to Federal Rules of Criminal Procedure 29. The Court did not elaborate, but neither did it direct a verdict of not guilty or a dismissal of the cause. Rather, it reversed the judgment of the trial court and remanded the case "for proceedings consistent with this opinion."

We have no rule which is the equivalent of Federal Criminal Procedural Rule 29, hence we do not have to reckon with whether it requires an absolute acquittal under such circumstances or whether it would permit a qualified acquittal. Under the circumstances of the case before us, which appears to be identical to those of the *Burks* case, had a motion for judgment on the evidence been made at the close of all of the evidence, it would not have been proper to have directed a verdict of absolute acquittal. However, there being insufficient evidence upon the sanity issue to support a verdict of guilty, the defendant would have been entitled to have that issue withdrawn from the jury. Accordingly, the jury would have been left with two possible verdicts: not guilty and not guilty by reason of insanity. The verdict of guilty, of necessity is a finding that the defendant committed the criminal acts charged. Inasmuch as there was no evidence to sustain the State's burden of proof upon the sanity issue, such verdict is the equivalent of a verdict of not guilty by reason of insanity. Accordingly, I would remand the case to the trial court with instructions to enter a verdict of not guilty by reason of insanity and to proceed in accordance with the provisions of Ind. Code § 35–5–2–5.

HUNTER, J., concurs.