Shawn N. SPRINGER and Robert A. Proctor, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 478S70.

Supreme Court of Indiana.

Aug. 7, 1979.

Rehearing Denied Nov. 7, 1979.

J. Richard Kiefer, Indianapolis, Michael J. McDaniel, New Albany, for appellants.

Theo. L. Sendak, Atty. Gen., Charles D. Rodgers, Richard Albert Alford, Deputy Attys. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellants were charged in the Clark Circuit Court by criminal information with the offenses of kidnapping and rape of a female child under the age of 16 years. They were tried and found guilty by a jury and sentenced to life imprisonment for kidnapping and fifteen years for rape.

Both appellants were represented by Attorney McDaniel at trial. He also filed their Motion to Correct Errors, upon which their appeals are based. Appellant Proctor continued to be represented by Attorney McDaniels on appeal. Appellant Springer is represented by Attorney Kiefer on appeal. Separate briefs were filed. Appellants shared a transcript and were assigned Cause No. 478 S 70. Under Ind.R.Ap.P. 5(B) we consolidate these appeals for opinion in the furtherance of convenience and avoidance of unnecessary cost and delay.

Both appellants raise identical issues as follows: (1) that the court below erred in failing to grant a mistrial because of a spontaneous outburst in the courtroom; and (2) that the court below erred in refusing to grant the defendant's petition for re-sentencing pursuant to provisions of the new Indiana Code.

On April 23, 1977, S. H., a sixteen year old high school junior, and E. S., a fifteen year old high school sophomore, attended a party at Indiana Avenue and Charleston Road in New Albany, Indiana. E. S. stated she was not feeling well so she and S. H. left the party at about 10:00 p. m. As they were leaving the party, they walked down an alley that bordered a church parking lot on each side, when a blue Volkswagen, containing two male subjects, came down the alley and slowed down when it approached them. The occupants of the automobile tried to talk to the girls about going out with them, so they turned and headed back toward the party. At this time the passenger in the automobile came around the back of the car and grabbed S. H. by the arm and E. S. by the hair. S. H. was able to break loose and run, but E. S. was unable to free herself and testified that in the struggle the assailant struck her in the mouth with his fist and dragged and pushed her into the car. After the car moved, the passenger took off his shirt and blindfolded E. S. with it. E. S. said she could tell they were riding on a paved road and then, as the vehicle made some turns, they were on a gravel road for some period of time before they stopped. When they stopped she was led and dragged over some mud and junk, during which time she stumbled and fell several times. One of them said to go back further in the woods and while they were so doing the blindfold slipped from her eyes and she saw water that she identified as the Ohio river. While en route to this spot the passenger in the back seat had already partially disrobed her and at this spot in the woods they pulled her pants down. One of them sat on a log and made her bend over and have oral sex with him while the other got behind her and had sexual intercourse with her. They then traded places and reversed the positions and followed the same procedure. When they had finished they dragged her back to the automobile and were again proceeding down the gravel road when they turned onto the pavement. The car pulled over and stopped again and one of them started

disrobing her again when a police car pulled up and stopped them. Several police cars moved in and the defendants were apprehended at the scene.

## I.

While E. S. was testifying about the incident in the woods when the appellants were assaulting her, a man suddenly rose to his feet in the rear of the courtroom and shouted, "You sons of bitches!" It is assumed this man was the victim's father, however, the record does not disclose his identity. The judge immediately halted proceedings, admonished the jury to leave the courtroom and not to discuss what they had just heard in the courtroom until he called them back in to resume the trial. After the court had excused the jury the defendants moved for a mistrial. The court then directed a voir dire examination would be conducted by the court of each juror individually to determine hostility or prejudice as a result of the outburst in the hearing. Counsel and the court agreed that the court would question each juror as follows:

1. Did you hear a statement made by someone in the audience?

2. Repeat what you think you heard.

3. What did the statement mean to you when you heard it?

4. Did the statement influence you in your ability to determine the issues of the case or in your ability to be fair and impartial to both parties in the case?

5. Was there any discussion in the jury room concerning the statement?

6. What this discussion was and whether you were influenced by it or took part in such discussion.

7. Any other matters which would be suggested by counsel based upon the juror's answers.

Each juror was then called in separately and examined as the above questions indicated. Of the thirteen jurors examined (twelve regular and one alternate juror) only one of the jurors, juror number 5, Brenda Dailey, stated that she was so influenced by the incident that she could no longer be a fair and impartial juror to both parties at this point. She stated that even though she might try to disregard the incident and consider only the evidence she heard from the witness stand, she was not really sure she could do so.

All of the other jurors stated that they would not be influenced by the outburst but would decide the case on the evidence as it came from the witness stand. They said the testimony of the fifteen year old girl created a very tense and emotional situation and they assumed the person making the outburst was the father or some close friend of the victims but they did not know who it was. Each of them said they understood such emotion under the circumstances but would not be influenced by it in reaching a decision. Each of them further said the comments in the jury room after they were excused from the courtroom referred to the tense and startling nature of the incident but did not influence any of them nor did any of them indicate any conclusion or decision they had come to by reason of it. After the jurors were again out of the courtroom the defendants again moved for mistrial and the court made this statement.

Well, I don't want to cut you off but I was looking at each and every one of those jurors and it is my feeling that they were very candid and what they said is what they really believed. Twelve out of thirteen of them stated unequivocally that they were surprised, they heard the comment, the situation was tense but they have an open mind, they did not feel that it influenced them and I believe them and the motion for mistrial is overruled."

The jury was then returned to the courtroom and the court admonished the jury in the following words:

"Thank you. Mrs. Dailey, I want to thank you very much for being with us and taking time from your family and your job, etc., and I will at this time excuse you and ask that Mr. McCurdy, number 13, take the position of number 5. Now ladies and gentlemen, I do admonish you and you all have been examined indi-

vidually, specifically with regard to what you heard in the way of a comment and I do specifically admonish you at this time to disregard what you think you heard entirely, totally, and would remind you and I will in final instructions as I did in the preliminary instructions, that the only thing that a jury may consider is the sworn testimony of a witness or exhibits properly introduced and received or stipulated to, that is evidence. Nothing counsel may say is evidence; nothing else that happens in the courtroom is evidence and this reaction or comment or however you want to characterize it, is not evidence, has nothing to do with this case and you are to disregard that entirely, disregard that it even happened because it is not a part of this case."

■ The grant of a motion for mistrial lies largely within the discretion of the trial judge and will be disturbed only upon the showing of clear error, *Dewey v. State,* (1977) Ind., 345 N.E.2d 842, 846, or by an abuse of discretion. *Mitchell v. State,* (1978) Ind., 376 N.E.2d 473, 475. *See also Godfrey v. State,* (1978) Ind.App., 380 N.E.2d 621, 623. Judge Miller here handled the situation very judiciously. He followed the guidelines set out by this Court in *Lindsey v. State,* (1973) 260 Ind. 351, 295 N.E.2d 819, by examining each juror individually and determining the exposure to that juror and the likely effect the exposure had on each of them. He then excused the one juror who appeared to be affected beyond rehabilitation and again admonished all of them collectively.

In *Avery v. State,* (1978) Ind., 381 N.E.2d 1226, 1227, we said:

"The decision to grant or deny a mistrial lies in the sound discretion of the trial court, and is reviewable solely on the question of abuse thereof. *Bradberry v. State,* (1977) Ind., 364 N.E.2d 1183, 1187. Further, it is ordinarily assumed that a jury will heed the trial court's admonition that objectionable testimony was improper and should be disregarded, and a prompt admonition is thus normally sufficient to protect the rights of a defendant.

*Downs v. State,* (1977) Ind., 369 N.E.2d 1079, 1080."

Pertinent to this inquiry is the question of whether an examination of the circumstances of this trial indicate that the judgment of this jury was or could have been influenced against the defendant by this outburst in the courtroom. The record shows there was overwhelming evidence and testimony indicating the guilt of these defendants of both the crimes of kidnapping and rape. Admittedly, by all involved, the situation was very tense and emotional, occasioned by the fifteen-year-old girl telling the details of her experiences on that night. In addition to her testimony, S. H., her friend who escaped and brought help to the scene immediately testified that she observed one of the defendants drag E. S. by the hair and forcibly push her into the automobile which was then driven from the scene. Police reported that they received calls reporting someone screaming in the neighborhood and several people came out of the party in time to see the royal blue Volkswagen leaving the scene. Police officers stopped the vehicle while E. S. was still in the custody of the two defendants. The police observed that her mouth was bleeding, that her blue jeans were partly pulled off of her, that she had to pull them up when she left the automobile, and that she appeared to them to be in a state of shock. One of the officers testified that her hair was extremely disheveled, that she was covered with mud, and that as soon as the officers removed her from the automobile and separated her from the defendants she became hysterical. Doctor William G. Weathers examined E. S. at the hospital shortly thereafter and found laceration of her lip in the area of one of her incisor teeth and sensitivity around the area, she had a sensitive area on her skull, she had mud around her ankles, on her shoes and on her legs and blue jeans, she had a break in the mucousal lining of the entrance to the vagina and sperm cells were found in the vagina, she had a mucousal laceration in her rectum and sperm cells were found there. Both S. H. and E. S., as well as several police officers involved, were able to identify the defendants.

■ In the face of all this evidence presented to the jury, and the manner in which the jury was examined and admonished, we find no reversible error in the court's refusal to grant a mistrial.

## II.

The appellants were charged with the crime of kidnapping on April 28, 1977, for commission of the act on April 24, 1977, and were convicted for the crime of kidnapping on November 29, 1977. The crime of kidnapping at that time provided for a term of life imprisonment which was given to these appellants. The statute in effect at that time, Ind.Code § 35–1–55–1, was repealed by Acts of 1976, P.L. 148, § 24, p. 815. However, the new penal code adopted by said Act and the repeals contained therein were not to be effective until October 1, 1977, Acts of 1977, P.L. 340, § 151, p. 1611. This new code substitutes the crime of criminal confinement for kidnapping and carries a lesser penalty than the kidnapping statute did. Since these appellants were actually tried and convicted after October 1, 1977, it is their assertion that they should be sentenced under this new provision. We have decided this issue in previous decisions which are adverse to these appellants' position. Acts 1977, P.L. 340, § 150, p. 1611, which became effective October 1, 1977, provides:

"SECTION 150. (a) Neither this act nor Acts 1976, P.L. 148 affects:

(1) rights or liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

before October 1, 1977. Those rights, liabilities, and proceedings are continued, and penalties shall be imposed and enforced as if this act and Acts 1976, P.L. 148 had not been enacted.

(b) An offense committed before October 1, 1977, under a law repealed by Acts 1976, P.L. 148 shall be prosecuted and remains punishable under the repealed law."

■ Since these crimes were committed prior to October 1, 1977, the sentencing provisions of the old statute are applicable to these appellants and the court committed no error in sentencing them accordingly. *Colon v. State,* (1979) Ind., 389 N.E.2d 291, *State v. Palmer,* (1979) Ind., 386 N.E.2d 946, *Watford v. State,* (1979) Ind., 384 N.E.2d 1030, *Holsclaw v. State,* (1979) Ind., 384 N.E.2d 1026.

Finding no reversible error we affirm the trial court.

All Justices concur.