433 P.2d 620

**STATE of Arizona, Appellee,**

v.

**Robert K. GANSTER, Appellant.**

No. 1726.

Supreme Court of Arizona,
In Banc.

Nov. 17, 1967.

Darrell F. Smith, Atty. Gen., and Robert K. Corbin, Maricopa County Atty., by Gary M. Sundberg, Phoenix, for appellee.

Miller, Pearson & Sullivan, by Murray Miller, Phoenix, for appellant.

UDALL, Justice:

Robert K. Ganster, hereinafter referred to as defendant, was charged with the crime of assault with intent to commit murder upon the person of his wife. The defendant pled not guilty and not guilty by reason of insanity. At the conclusion of the trial a verdict of guilty was returned, and the defendant was sentenced to a term of five years to life imprisonment.

■ According to our well established rule, we must review the evidence in the light most favorable to sustaining the conviction thus resolving all reasonable inferences in favor of the state. State v. Blankenship, 99 Ariz. 60, 406 P.2d 729; State v. Mangrum, 98 Ariz. 279, 403 P.2d 925.

The pertinent facts are as follows: The defendant and his wife Mary resided in an apartment in Tempe. Sometime near midnight on September 25, 1965, three revolver shots were heard by a neighbor. Upon entering the Ganster apartment, the neighbor found Mary suffering from bullet wounds in her chest and ankle; the defendant with a bullet wound in the head was lying close by. A revolver was beside him. According to Mary's testimony, on the night of the shooting an argument arose between Mary and the defendant. After the argument the defendant obtained Mary's suitcases for her and she began to pack. The defendant went to the kitchen and procured a gun. He returned, pointed the gun at Mary and shot her, then apparently turned the gun on himself.

■ On this appeal the principal question concerns the defense of insanity. There is a presumption that all persons are sane and ordinarily in a criminal case the prosecution may rely on this presumption. Foster v. State, 37 Ariz. 281, 294 P. 268. However the defendant may raise the issue of insanity in his defense, and when he does so, it is the state's burden to establish beyond a reasonable doubt that the defendant was legally sane. State v. Schantz, 98 Ariz. 200, 403 P.2d 521; see also State v. Martin, 102 Ariz. 142, 426 P.2d 639.

In the instant case the issue of insanity was raised. Defendant offered the expert testimony of two psychiatrists in support thereof. It is contended that this was sufficient to overcome the presumption of sanity and to require the state to prove defendant's

sanity beyond a reasonable doubt, as it must prove all material issues of fact.

Dr. Maurice Ruland, testifying for the defendant, stated that as a full-time psychiatrist at the Maricopa County Hospital he had treated the defendant physically and mentally from a period shortly after the September 25th incident through the date of the trial in March of the following year. Based on several examinations made during that period Dr. Ruland expressed the opinion that the defendant could not on September 25th or the early morning hours of September 26, 1965 distinguish right from wrong nor did he know at that time the natural and probable consequences of the acts he committed. The doctor also stated that he felt the defendant should have had psychiatric treatment and still required it, although his condition would not require additional hospitalization.

On cross-examination the psychiatrist said that the only evidence of organic brain damage was caused by the bullet wound the defendant suffered on the September 25th incident. He testified further that the defendant had not, to the best of his knowledge, ever been previously treated or hospitalized for mental illness and conceded that a man facing a trial as the defendant was, might tend to exaggerate symptoms of insanity or abnormality during a psychiatric interview, and that the defendant was, while under examination, aware that he was being charged or would be charged with a crime.

Dr. Ruland, in further discussing the defendant's condition, said that while the defendant was fully oriented mentally at the time of the trial, the defendant apparently had no memory of that segment of his life which involved the alleged criminal incident at issue here. The condition the defendant was said to have suffered during that period was described by the doctor as disassociated reaction, a condition which would be categorized with amnesia. Dr. Ruland stated that disassociated reaction could be faked, that the condition was a partial amnesia—equivalent to a dream state, sectional or fractional memory.

Finally, Dr. Ruland stated that he had found no evidence of psychosis in the defendant's behavior, and that accepting the general use of the term sane, he found the defendant sane prior to the alleged criminal incident. Stating that though he considered the defendant mentally ill, because extremely neurotic, the doctor said he did not feel that his condition would have at any time required the defendant's hospitalization.

Dr. Samuel Wick, also a psychiatrist, was the second expert witness called for the defense. He testified that based on an examination which occurred six months after the involved incident he felt capable of expressing an opinion as to the defendant's sanity. In answer to the question of whether the defendant could have, at the time of the alleged crime, distinguished between right and wrong the doctor stated:

"The question as to whether he was able to distinguish right and wrong and to have the responsibility to do so depends upon the series of events which had taken place during that evening and subsequent to—following or during the night and early morning. He was able to understand what was happening up to a certain point as he described it. The afternoon, he and his wife were having an argument about some of the situations that had existed in the household and the feeling that she had that he was usurping some of her prerogative, so to speak, and this argument subsided. They went out in the evening and visited some friends and came home about 11 p.m. And they seemed to be fairly congenial, and then the argument started again. Subsequent to this argument she indicated that there was no further use to continue and that she was going to leave. He then went to the closet to obtain a suitcase, which he brought to the bedroom where she began packing. Up to that point he was aware of what was happening. He was alert, and in good contact. After he noticed her packing he left the room, went back to the closet. Then he is unable to recall the de-

tails and the events subsequent to that time. And I would say then is when he was unable to differentiate between right and wrong."

The doctor stated also that from the point of the defendant's loss of memory he would not have known the natural and probable consequences of the act he committed.

On cross examination Dr. Wick stated that because the defendant had suffered no previous organic brain damage or hospitalization it was more difficult to render an opinion on a state of mind at a prior time. He said further that,

"With a brain injury following a bullet wound or any other type of trauma in which it is possible to have what is called a retrograde amnesia, that is a forgetting of the events and incidents of the actual occurrence and for a time preceding the occurrence. But, you see, this doesn't fit into that category specifically because if it were true then he wouldn't remember any of the incidents that had taken place."

While the prosecution presented a psychiatrist also, his testimony was in agreement with the opinions expressed by the defense-called psychiatrists. In fact, as was brought out by the prosecution in the cross examination of one of the defense-called psychiatrists, these three witnesses had conferred subsequent to their individual examinations of the defendant and had concluded that their findings were substantially similar.

The defendant's former wife, the victim of the alleged crime, gave testimony describing the occurrences of the night of the shooting, as previously discussed. In answer to questions concerning her husband's mental state she stated that she had seen her husband excited and angry at times previous to the involved occurrence. She answered too that it was a normal anger he had experienced just like that which anyone else would experience. She said that he had no particular expression on his face at the time of the shooting and that she did not recall hearing him say anything at the moment of the shooting. The defendant also took the stand, offering lengthy testimony describing his background, marital problems and recollections of the night of the alleged criminal incident.

■ It is the defense contention on this issue that expert testimony having been given to the effect that defendant was not legally sane at the time of the commission of the alleged crime and the state not having countered with any testimony of sanity, the trial court should have directed a verdict of acquittal under Rule 270 of the Arizona Rules of Criminal Procedure, 17 A.R.S. We find however that the defendant's wife gave testimony which described the appearances and acts of the defendant on the night of the alleged crime. In addition she testified that she felt he had experienced only "normal" anger. Also the jury had a good opportunity to evaluate the defense position on sanity when the defendant took the stand, describing at that time the night of the alleged crime as he remembered it. Finally, while each of the psychiatrists did state that the defendant was apparently not legally sane at the time of the commission of the alleged crime; the time lapse between the act and the examinations, the brain damage caused by the self-inflicted bullet wound, the motivation to exaggerate symptoms in the face of prospective criminal prosecution, and the fact that background information for the studies had been obtained only from the defendant and his mother, were all obvious incidents to these examinations which a jury could justifiably consider.

■ The issue of criminal responsibility in Arizona has traditionally been a fact question for the jury. In addition, the credibility of expert witnesses and the weight to be given expert testimony has been a jury question in this state. State v. Schantz, supra. We feel that a numerical advantage in a head count of witnesses and the mere fact that testimony is elicited from competent psychiatrists do not suffice to necessitate the direction of a verdict for one party or the other. See Bowker v. State, Alaska, 373 P.2d 500. Instead we feel that

for a directed verdict of acquittal to be proper, the trial judge must possess a conscientious conviction that all of the elements of an offense have not been established beyond a reasonable doubt. State v. Schantz, supra. Hence, in order to remove a case from jury consideration the trial court must conclude that on the basis of the evidence reasonable men must necessarily possess a reasonable doubt as to the defendant's sanity at the time of the commission of the alleged crime.

The defendant cites several cases in support of his position but all of the cases cited are distinguishable from the case now under consideration; for instance, in Hartford v. United States, 9 Cir., 362 F.2d 63, the Court pointed out in its opinion that "[o]n a dozen or more occasions" the defendant had been committed or returned to the New Jersey State Hospital, the Federal Medical Center at Springfield, Missouri and the Arizona State Hospital. Such evidence together with other supporting evidence was obviously a sufficient basis for the court's conclusion that the evidence of insanity was substantial and reasonably impressive. Thus the court therein held that reasonable men must necessarily possess a reasonable doubt as to Hartford's sanity at the time of the alleged crime and therefore directed a verdict of acquittal. Likewise in the case of Isaac v. United States, 109 U.S.App.D.C. 34, 284 F.2d 168, the court found that the testimony regarding defendant's sanity was impressive and substantial. In addition we further note that there is a substantial difference between the M'Naghten rule of our jurisdiction and the rule followed in the District of Columbia.

The case of Buatte v. United States, 9 Cir., 330 F.2d 342 merely held that where the testimony of several psychiatrists was to the effect that the defendant did not know right from wrong when he allegedly committed a crime, that the prosecution must establish the fact of sanity beyond a reasonable doubt and that under those facts sufficient evidence had not been produced. A retrial of that matter resulted in a conviction which was affirmed in Buatte v. United States, 9 Cir., 350 F.2d 389, the court having found that the prosecution therein had sustained its burden by a rebuttal of the defense-offered expert testimony.

In the present case there is no history of prior hospitalization or prior psychiatric treatment for the defendant. The only information obtained by any of the experts was obtained either from the defendant himself or from the defendant's mother. All experts who testified found that the defendant was sane prior to the act committed and was sane at the time of trial. The only evidence of organic brain damage was that caused by the shot which appellant inflicted upon himself subsequent to the shooting of the victim. All of the evidence of emotional disturbance was of short duration and none of it was of a substantial nature.

 Furthermore the jury in this case had the testimony of the victim as to the defendant's acts immediately before, at the time, and subsequent to the shooting. In view of all the facts and circumstances of the case, the question of the sanity of defendant was properly submitted to the jury, and the jury's finding of guilty was adequately supported by the evidence.

 Defendant also contends that the trial court failed to properly instruct the jury upon the elements of the crime charged. The instruction given by the Court is as follows:

"Now Section 13–248 of the Arizona Revised Statutes defines the crime of assault with intent to commit murder. The gist is that a person who assaults another with intent to commit murder is guilty of a felony."

This Court has determined that the essential elements of the crime of assault with intent to commit murder are the assault and the intent or purpose of committing the act. State v. Cravin, 96 Ariz. 346, 395 P.2d 706; Hann v. State, 30 Ariz. 366, 247 P. 129. It is admitted by the state that the court did not define the word "assault", nor did the

court specify that the intent must show malice aforethought. But the state contends that it was not necessary to give an instruction relative to or in definition of the word "assault" since counsel for the defendant stated in open court that "he did not deny the disagreement nor that the shots occurred", and further stated: "we feel that the defendant is not guilty by reason of temporary insanity, and that is the extent of our defense." It was apparent that the defendant was relying solely on the defense of insanity and made no attempt to contend that the instruction relative to the definition of the word "assault" should be given by way of an instruction. The defendant through his attorney has admitted that the acts complained of happened, but contends that the defendant was not responsible for such acts because at the time of the commission of the same he was legally insane. By requesting the court to instruct only as to the crime charged, the defendant apparently took the position that if the jury chose to find him criminally responsible for his acts the question of his being guilty of assault with intent to commit murder would be properly presented to the jury.

In a criminal case a trial judge is obliged to instruct the jury on his own motion upon the law relating to facts of that case and matters vital to a proper consideration of the evidence. Rule 274, Rules of Criminal Procedure, 17 A.R.S. However, generally the failure to give an instruction in the absence of a request for same is not error. To constitute error the prejudice thereby caused must be of a fundamental nature which goes to the foundation of the case, or which takes from the defendant a right essential to his defense. State v. Pulliam, 87 Ariz. 216, 349 P.2d 781, 785.

We cannot conclude that the instruction the defense now refers to was so vital to the rights of the defendant that its omission necessarily created fundamental error. State v. Pulliam, supra. Thus we conclude that the error complained of in the instructions regarding the definition of the word "assault" could not constitute such a

fundamental error as goes to the foundation of the case or which would have deprived the defendant of his constitutional rights to a fair and impartial trial.

Judgment affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.