IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID LEE JONES, *Appellant*.

No. 1 CA-CR 23-0566

FILED 10-17-2024

Appeal from the Superior Court in Yavapai County
No. P1300CR202200984
The Honorable Debra R. Phelan, Judge

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

---

**OPINION**

Judge D. Steven Williams delivered the Court's opinion, in which Presiding Judge Michael J. Brown joined. Judge Daniel J. Kiley dissented.

---

**W I L L I A M S**, Judge:

¶1        In Arizona, the occupant of a vehicle may lawfully threaten or use physical or deadly force to defend against another person's unlawful or forceful entry into the vehicle if the occupant reasonably believes the intruder poses an imminent threat of serious physical injury or death. A.R.S. § 13-418. Here, Defendant David Jones appeals his convictions and sentences for aggravated assault and disorderly conduct. Because the superior court did not *sua sponte* instruct the jury on justification while in an occupied vehicle—preventing Jones from fully claiming justification for his actions and effectively relieving the State of its burden to prove he did not act with justification—we vacate the convictions and sentences and remand for a new trial.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        One summer 2022 evening, Jones and "Darrel" (a pseudonym) got into an argument over a parking spot outside of a fast-food restaurant in Prescott Valley. Police responded. Jones admitted pointing a handgun at Darrel and showed the police where he placed the gun inside his vehicle.[1]

¶3        The State charged Jones with one count of aggravated assault ("Count 1"), a class three dangerous felony, and one count of disorderly conduct ("Count 2"), a class six dangerous felony. At trial, the State called an eyewitness, who testified that when she and her family left the restaurant, she saw Darrel's car pull into a parking space about twenty feet away from her. As Darrel stepped out of his car and began walking toward the restaurant, she heard Jones, the driver of another car, yell at Darrel. The witness explained that by the time Darrel walked within ten feet or so of Jones's car, the two men were engaged in a heated verbal exchange. Jones then stepped out of his car holding a handgun, which he pointed directly

---

[1]        Before questioning Jones, police officers advised him of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

at Darrel. Darrel put his hands in the air, backed away, and went into the restaurant.

¶4 Largely consistent with the eyewitness's testimony, Darrel recounted that on the evening of the incident, he drove to the fast-food restaurant to pick up food for his son. Once Darrel parked his car and began walking toward the restaurant, he heard Jones "yelling and cussing." When Darrel realized that Jones's anger was directed at him, and that Jones wanted him to "move [his] motherf[---]ing car," he responded in kind while "clos[ing] the gap" between them as he walked toward the restaurant. According to Darrel, Jones then got out of his car, brandished a handgun, pointed it "directly" at him and said, "I'm going to kill you." Darrel put his hands in the air and began walking backward into the restaurant, where he called 911.

¶5 Taking the stand in his own defense, Jones testified that he arrived at the fast-food restaurant, selected a parking spot, drove his car just past the space and then began backing into it when Darrel drove his car into the spot. As Darrel walked past Jones's car and toward the restaurant, Jones called out to him through his open driver-side window and Darrel responded. According to Jones, the exchange quickly escalated, with Darrel approaching Jones's car, leaning into the open driver's-side window, and "screaming into [Jones's] face." Restrained by his seatbelt, Jones tried to distance himself from Darrel by leaning into the passenger seat. But when he ordered Darrel out of his car, Darrel "lung[ed]" further inside, "throwing his hands out" and saying, "[b]ring it." "[F]ear[ing] for [his] life," Jones pulled out his handgun and pointed it at Darrel. Only then did Darrel put up his hands and begin "backing up." On cross-examination, Jones denied stepping out of his car at any point during the altercation, testifying that he placed the handgun underneath his car radio before exiting his vehicle and calling 911.

¶6 After a two-day trial, a jury convicted Jones as charged. At sentencing, the trial court imposed a mitigated 5-year term of imprisonment for Count 1 and a concurrent, mitigated 1.5-year term of imprisonment for Count 2.

¶7 Jones timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

**DISCUSSION**

¶8        Jones challenges the trial court's final instructions to the jury. He argues that his theory of the case compelled the court to instruct the jury on the defense of an occupied vehicle justification under A.R.S. § 13-418, and that the court's failure to do so deprived him of a fundamental right essential to his defense.

¶9        Following the presentation of evidence on the first day of trial, the court briefly addressed the final jury instructions with the attorneys, directing defense counsel to consider which instructions Jones would like submitted to the jurors. The following day, during the settling of final instructions, the court noted that defense counsel had requested the jury be instructed on "justification, self-defense" and "justification, physical force." *See* Rev. Ariz. Jury Instr. ("RAJI") Stat. Crim. 4.04 (5th ed. 2019) (Justification for Self-Defense); RAJI Stat. Crim. 4.05 (Justification for Self-Defense Physical Force). Pointing to Jones's trial testimony, the court stated that the evidence also supported an instruction on the defensive display of a weapon, and defense counsel concurred. *See* RAJI Stat. Crim. 4.21 (Justification: Defensive Display of a Firearm). In response to direct questioning by the court, defense counsel stated, twice, that he requested no other justification instructions, and he approved the final form of the jury instructions without objection.

I.        **Analysis Under the *Sulu-Kerr* Framework**

¶10        In *State v. Sulu-Kerr*, 256 Ariz. 530, 537–38, ¶¶ 24–27 (App. 2024), this court considered whether a trial court had an independent duty to instruct jurors on the defense of an occupied vehicle justification under A.R.S. § 13-418—apart from instructions on self-defense and the use of deadly physical force under A.R.S. §§ 13-404 and -405. To resolve Jones's challenge in this case, we apply the analytic framework outlined in the *Sulu-Kerr* opinion.

¶11        "We review de novo whether a trial court properly instructed the jury, and whether [the given] jury instructions properly state the law." *Sulu-Kerr*, 256 Ariz. at 535–36, ¶ 18 (quoting *State v. Ewer*, 254 Ariz. 326, 329, ¶ 10 (2023)). "In so doing, '[w]e consider the jury instructions as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision.'" *Id.* (quoting *Ewer*, 254 Ariz. at 329, ¶ 10).

¶12        Because Jones failed to challenge the omission of an instruction on the defense of an occupied vehicle justification in the trial court, we review his appellate challenge only for fundamental, prejudicial

error. *See* Ariz. R. Crim. P. 21.3(b) ("Any objection to the court's giving or failing to give any instruction . . . must be made before the jury retires to consider its verdict. . . . If a party does not make a proper objection, appellate review may be limited."); *see also State v. Gendron*, 168 Ariz. 153, 154 (1991) ("Absent a finding of fundamental error, failure to raise an issue at trial, including failure to request a jury instruction, waives the right to raise the issue on appeal."); *State v. Gallegos*, 178 Ariz. 1, 12 (1994) ("[A] trial judge's failure to give an instruction *sua sponte* provides grounds for reversal only if such failure is fundamental error."); *cf. State v. Escalante*, 245 Ariz. 135, 145, ¶¶ 36–37 (2018) (rejecting State's argument "that when a failure to object could have been strategic, it is more appropriate to consider the issue in post-conviction relief proceedings than in fundamental error review . . . If fundamental, prejudicial error necessitates a new trial, no reason exists" to "delay justice and waste judicial resources" by "await[ing] post-conviction relief proceedings to grant that remedy").

**¶13**        "On fundamental error review, the omission [of an instruction] must be evaluated in light of the totality of the circumstances, and [w]e will not reverse a conviction unless we can reasonably find that the instructions, when taken as a whole, would mislead the jurors." *Sulu-Kerr*, 256 Ariz. at 536, ¶ 20 (internal quotations and citations omitted); *see also Gallegos*, 178 Ariz. at 10 ("It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein."). "To prevail under the fundamental error standard, a defendant must show an error that 'goes to the foundation of a case, takes away an essential right, or is so egregious that [the] defendant could not have received a fair trial.'" *Sulu-Kerr*, 256 Ariz. at 536, ¶ 20 (quoting *State v. Murray*, 250 Ariz. 543, 548, ¶ 14 (2021)). "Although the defendant bears the burden of persuasion at each step of the analysis, []he 'need only establish one prong to prove fundamental error exists.'" *Id.* (quoting *Murray*, 250 Ariz. at 548, 550, ¶¶ 14, 20). "An error takes away an essential right if it deprives the defendant of a constitutional or statutory right necessary to establish a viable defense or rebut the prosecution's case." *Id.* (quoting *Murray*, 250 Ariz. at 551, ¶ 24) (internal quotation omitted). "To establish prejudice, a defendant must show that 'without the fundamental error, a reasonable jury . . . *could have* reached a different [verdict].'" *Id.* (quoting *Murray*, 250 Ariz. at 548, ¶ 14).

**¶14**        "No error occurs when a trial court omits a particular instruction if the instructions given 'fairly represent[] the applicable law.'" *Id.* at ¶ 21 (quoting *State v. Axley*, 132 Ariz. 383, 392 (1982)). "But 'the court has an independent duty to instruct on the law when the matter is vital to a proper consideration of the evidence, even if the particular instruction is

not requested,'" *id.* (quoting *State v. Almaguer*, 232 Ariz. 190, 193, ¶ 5 (App. 2013)), and the failure to do so constitutes fundamental error," *id.* (citing *State v. Edmisten*, 220 Ariz. 517, 522, ¶ 11 (App. 2009) ("With regard to jury instructions, fundamental error occurs when the trial judge fails to instruct upon matters vital to a proper consideration of the evidence)" (internal quotation and citation omitted)); *see also State v. Avila*, 147 Ariz. 330, 337 (1985) ("[A] trial court has a duty to instruct on the law relating to the facts of the case when the matter is vital to a proper consideration of the evidence, even if not requested by the defense and failure to do so constitutes fundamental error."). "Jury instructions must not 'mislead[] the jury.'" *Sulu-Kerr*, 256 Ariz. at 536, ¶ 21 (quoting *Ewer*, 254 Ariz. at 329, ¶ 11).

**¶15**      We begin by examining the final jury instructions and the related statutes governing self-defense and justification, mindful that "[j]ustification is not an affirmative defense that the defendant must prove." *State v. King*, 225 Ariz. 87, 89, ¶ 6 (2010). Rather, because "actions taken in self-defense transform conduct that would otherwise be criminal into legally permissible conduct," *State v. Carson*, 243 Ariz. 463, 466 (2018), when a defendant presents any evidence of self-defense, the State must prove "beyond a reasonable doubt that the defendant did not act with justification." *King*, 225 Ariz. at 89, ¶ 6 (quoting A.R.S. § 13-205(A)). "In effect, once sufficient self-defense evidence is admitted, the absence of self-defense becomes an additional element the state must prove to convict." *Carson*, 243 Ariz. at 466; *see also Avila*, 147 Ariz. at 337–38 (explaining that the trial court has a duty "to give an instruction accurately defining all the elements" of an offense, and its failure to do so, when the element is contested, constitutes fundamental error); *cf. State v. Kemper*, 229 Ariz. 105, 107, ¶¶ 5–6 (App. 2011) (concluding instructions that "improperly relieved the State of its burden of proving an element of the offense" constituted fundamental error).

**¶16**      The trial court provided the following justification final instructions to the jury, in relevant part:

**Justification for Self-Defense**

A defendant is justified in using or threatening physical force in self-defense if the following two conditions existed:

1.   A reasonable person in the situation would have believed that physical force was immediately necessary to protect against another's use or apparent attempted or threatened use of unlawful physical force; and

2. The defendant used or threatened no more physical force than would have appeared necessary to a reasonable person in the situation.

A defendant may use deadly physical force in self-defense only to protect against another's use or apparent attempted or threatened use of deadly physical force. Self-defense justifies the use or threat of physical force or deadly physical force only while the apparent danger continues, and it ends when the apparent danger ends. The force used may not be greater than reasonably necessary to defend against the apparent danger.

The use of physical force is justified if a reasonable person in the situation would have reasonably believed that immediate physical danger appeared to be present. Actual danger is not necessary to justify the use of physical force in self-defense.

You must decide whether a reasonable person in a similar situation would believe that: physical force was immediately necessary to protect against another's use, attempted use, threatened use, apparent attempted use, apparent threatened use, of unlawful physical force; or you must measure the defendant's belief against what a reasonable person in the situation would have believed.

The threat or use of physical force is not justified:

1. In response to verbal provocation alone;

2. If the defendant provoked the other's use of unlawful physical force, unless:

   a. The defendant withdrew from the encounter or clearly communicated to the other person the defendant's intent to withdraw, reasonably believing that the defendant could not withdraw from the encounter; and

   b. The other person nevertheless continued or attempted to use unlawful physical force against the defendant.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to

carry this burden, then you must find the defendant not guilty of the charge.

**Justification for Self-Defense Physical Force**

A defendant is justified in using or threatening deadly physical force in self-defense if the following two conditions existed:

1. A reasonable person in the situation would have believed that deadly physical force was immediately necessary to protect against another's use or apparent attempted or threatened use of unlawful deadly physical force; and

2. The defendant used or threatened no more deadly physical force than would have appeared necessary to a reasonable person in the situation.

A defendant may use deadly physical force in self-defense only to protect against another's use or apparent attempted or threatened use of deadly physical force.

Self-defense justifies the use or threat of deadly physical force only while the apparent danger continues, and it ends when the apparent danger ends. The force used may not be greater than reasonably necessary to defend against the apparent danger.

The use of deadly physical force is justified if a reasonable person in the situation would have reasonably believed that immediate deadly physical danger appeared to be present. Actual danger is not necessary to justify the use of deadly physical force in self-defense.

You must decide whether a reasonable person in a similar situation would believe that: Deadly physical force was immediately necessary to protect against another's use, attempted use, threatened use, apparent attempted use, apparent threatened use, of unlawful deadly physical force.

You must measure the defendant's belief against what a reasonable person in the situation would have believed.

A defendant has no duty to retreat before threatening or using deadly physical force in self-defense if the defendant:

1. Had a legal right to be in the place where the use or threatened deadly physical force in self-defense occurred; and

2. Was not engaged in an unlawful act at the time when the use or threatened deadly physical force in self-defense occurred.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act with such justification. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

**Justification: Defensive Display of a Firearm**

The defendant is justified in defensively displaying a firearm if a reasonable person would have believed that physical force was immediately necessary to protect himself against the use or attempted use of unlawful physical force or deadly physical force.

The defendant was not justified in displaying a firearm if:

1. The defendant intentionally provoked another person to use or attempt to use unlawful physical force.

2. The defendant used a firearm during the commission of an aggravated assault involving the use or threatening exhibition of a deadly weapon or dangerous instrument.

"Defensive display of a firearm" includes:

1. [E]xposing or displaying a firearm in a manner that a reasonable person would understand was meant to protect the person against another's use or attempted use of unlawful physical force or deadly physical force.

The defendant was not required to defensively display a firearm before using physical force or threatening physical force that was otherwise justified.

The State has the burden of proving beyond a reasonable doubt that the defendant did not defensively display a firearm. If the State fails to carry this burden, then you must find the defendant not guilty of the charge.

. . .

"**Deadly physical force**" means either:

1.  [F]orce which is used with the purpose of causing death or serious physical injury, or

2.  [F]orce which in the manner of its use is capable of creating a substantial risk of causing death or serious physical injury.

**¶17**        Read together, these instructions informed the jury that Jones was justified in threatening deadly physical force (displaying a firearm) only if reasonably necessary to protect against the victim's unlawful use of: (1) deadly physical force, or (2) physical force, insofar as Jones did not provoke the victim (unless he had retreated or signaled his intent to retreat). Unlike the instructions given, which track A.R.S. §§ 13-404, -405, and -421, the justification defense of an occupied vehicle statute provides that:

A.  *Notwithstanding any other provision* of this chapter, a person is *justified in threatening to use* or using physical force or *deadly physical force* against another person if the person *reasonably believes* himself or another person to be in *imminent peril of* death or *serious physical injury* and the person against whom the physical force or deadly physical force is threatened or used was in the *process of unlawfully or forcefully entering*, or had unlawfully or forcefully entered, a residential structure or *occupied vehicle*, or had removed or was attempting to remove another person against the other person's will from the residential structure or occupied vehicle.

B.  A person has no duty to retreat before threatening or using physical force or deadly physical force pursuant to this section.

A.R.S. § 13-418 (emphasis added).

**¶18**        In *Sulu-Kerr*, the defendant drove a vehicle stolen by her housemate to a gas station shortly before dawn. 256 Ariz. at 533, ¶¶ 2–3. Remarkably, the owner of the vehicle and his brother were nearby when the defendant pulled up to a gas pump. *Id.* at ¶ 3. Upon recognizing the stolen car, the men charged toward it, ordering the defendant and her passenger to "get out." *Id.* Frightened, having never seen the men before,

the defendant pulled forward, fatally hitting one of the men, and then drove away. *Id.* In a subsequent police interview, the defendant claimed she feared for her safety when the men rushed the vehicle, alleging she saw the owner "reach toward his pocket to possibly pull out a gun." *Id.* at 533–34, ¶ 6.

**¶19** At the defendant's trial on charges of aggravated assault, manslaughter, theft of a means of transportation, and leaving the scene of a fatal accident, "defense counsel argued that [the defendant] had acted in self-defense, not knowing the [vehicle] was stolen and believing her safety was in jeopardy when she hit [the victim] and drove away." *Id.* at 534, ¶ 7. Consistent with the defense's theory of the case, the defendant's passenger testified that the owner of the stolen vehicle and his brother appeared "out of nowhere" and "that one or the other ordered him and [the defendant] out of the vehicle, slammed the hood, tried to open the door, reached into the vehicle through the open driver-side window, and then reached into a bag or backpack," causing the passenger to fear he may be shot. *Id.* (internal quotations omitted). A jury found the defendant guilty of the lesser-included offense of negligent homicide rather than manslaughter, but otherwise found her guilty as charged. *Id.* at 534, ¶ 9.

**¶20** On appeal, the defendant argued that the trial court erred by failing to instruct the jurors on the defense of an occupied vehicle justification under A.R.S. § 13-418. *Id.* at 535, ¶ 15. "Because [the defendant] failed to adequately raise a challenge to the omission of [the] instruction" in the trial court, "we review[ed] her appellate challenge only for fundamental, prejudicial error." *Id.* at 536, ¶ 19. Analyzing the relevant self-defense and justification statutes, we determined that A.R.S. § 13-418 "establishes a different and more permissive legal standard for evaluating" a defendant's conduct than its basic self-defense counterparts, A.R.S. §§ 13-404 to -406. *Id.* at 538, ¶ 27.

> Unconstrained by any other Title 13 statute and broader in scope than A.R.S. §§ 13-404 through -406, A.R.S. § 13-418 justifies the use of deadly physical force by the occupant of a vehicle against the threat of serious physical injury or death posed by a person in the process of forcefully entering the vehicle or attempting to remove the occupant from the vehicle, even if the other person's actions are not unlawful. Arizona case law "has long rejected" the argument that a self-defense instruction "adequately cover[s]" justification because the underlying statutes protect against separate harms. *See State v. Almeida*, 238 Ariz. 77, 81-83 ¶¶ 17-23 (App.

11

2015) (characterizing crime prevention justification as "more permissive" than self-defense). Under a theory of basic self-defense, a defendant may act only to protect herself or a third party against another's use of unlawful force, A.R.S. §§ 13-404 to -406, but under a theory of justification, there is no requirement of unlawful conduct; forceful conduct, alone, is sufficient. *See* A.R.S. § 13-418(A); *see also Almeida*, 238 Ariz. at 80-81, ¶ 13. In other words, "[i]t is of no import that a victim may have justifiably used or threatened force because the legality of the victim's conduct is immaterial to a justification analysis." *Ewer*, 254 Ariz. 330, ¶ 19. Equally important, A.R.S. § 13-418, unlike its basic self-defense counterparts, A.R.S. § 13-404 to -406, imposes no duty on the occupant of a vehicle to retreat in the face of a forceful entry or removal[.]

*Id.* at ¶ 25.

**¶21**        Accordingly, we concluded that "the trial evidence not only supported an instruction on the defense of an occupied vehicle justification, it *compelled* the inclusion of the instruction." *Id.* at 538, ¶¶ 26–27 (emphasis added). Indeed, we held that "without an instruction on the defense of an occupied vehicle justification, the instructions given failed to inform the jury of the law vital to its proper consideration of the evidence." *Id.* at 539, ¶ 27.

**¶22**        To evaluate the prejudicial effect of the erroneous omission, we reviewed the evidence and the State's closing argument to the jury. *Id.* at 539–40, ¶¶ 32–33. Pointing to the prosecutor's assertion that the defendant's "possession of the stolen vehicle imposed upon her a duty to retreat" and invitation to the jurors "to reject [the defendant's] claim of self-defense on that basis," we concluded that "the prosecutor both mischaracterized the law and compounded the prejudice from the incomplete statement of the law reflected in the given instructions." *Id.* at 540, ¶ 34. "Because [the defendant's] primary, if not sole, defense against the aggravated assault and manslaughter charges was justification—that she reasonably fled the gas station after [the vehicle's owner and his brother] rushed the [stolen vehicle], and [] attempted to open the car door and reach inside the driver-side window while ordering her to get out," we found that "the prosecutor essentially relieved the State of the burden of proving [the defendant] acted without justification." *Id.* at 540, ¶¶ 34–35. Because a reasonable jury "could have plausibly and intelligently found [the defendant's] conduct to be justified" had the trial court properly instructed on all "law vital to a proper consideration of the evidence," we

held that "the omission of an instruction on the defense of an occupied vehicle justification constituted fundamental, prejudicial error" and vacated the convictions for aggravated assault and negligent homicide accordingly. *Id.* at 541, ¶ 37.

**¶23**　　　As in *Sulu-Kerr*, the instructions given in this case were incomplete. Had the jurors believed Jones's account of the altercation—that the victim forcefully entered his vehicle, causing him to reasonably believe it necessary to brandish a gun to fend off imminent harm—the instructions given nonetheless compelled them to convict Jones as charged. Simply put, the instructions given provided justification for the threat of deadly physical force *only* if the victim used or threatened to use unlawful deadly physical force or used or threatened to use unlawful physical force—if unprovoked. By contrast, the defense of an occupied vehicle under A.R.S. § 13-418 justifies the threat of deadly physical force by a vehicle's occupant against a person who forcefully enters the vehicle—even if the occupant verbally provoked the intruder—if the occupant "reasonably believes himself or another person to be in imminent peril of death or serious physical injury." Without an instruction on the defense of an occupied vehicle justification, the instructions given failed to inform the jury of all law vital to its proper consideration of the evidence.

**¶24**　　　Having so found, we consider whether the omission of an instruction under A.R.S. § 13-418 prejudiced Jones. Like the circumstances in *Sulu-Kerr*, here, Jones's only trial defense was justification—that he (1) reasonably believed the victim, lunging through his car's open window, placed him in imminent peril of serious physical injury and (2) acted reasonably by displaying a gun to prevent that harm.

**¶25**　　　"To establish prejudice, a defendant must show that had the trial court provided proper instructions, 'a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* at 539, ¶ 32 (quoting *Murray*, 250 Ariz. at 552, ¶ 30). "An erroneous jury instruction could lead an objective, reasonable jury to reach a different verdict if the error relates to the defense against the charge." *Id.* (quoting *State v. Fierro*, 254 Ariz. 35, 42, ¶ 25 (2022)). "[E]valuating prejudice . . . requires a court to examine the entire record-including jury instructions-*in context* with counsel's arguments." *Id.* (quoting *Murray*, 250 Ariz. at 553, ¶ 37). "In other words, '[a]ppellate courts do not evaluate jury instructions out of context. Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." *Id.* (quoting *State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989)). "While a prosecutor's closing argument may ameliorate an erroneous jury instruction by 'clarif[ying] any possible

misunderstanding, it may also compound the prejudice of an erroneous instruction." *Id.* (quoting *Bruggeman*, 161 Ariz. at 510); *see also State v. Johnson*, 205 Ariz. 413, 417, 420–21 ¶¶ 11, 26, 28 (App. 2003) (finding an "incomplete" instruction, "in conjunction with the closing arguments of counsel," warranted reversal).

¶26 During closing argument, the prosecutor repeatedly relied on the instructions given to support her contention that Jones's actions were not justified. Indeed, the prosecutor argued that Jones was not legally entitled to "the protections of self-defense" because he "start[ed]" the "encounter" by verbally provoking the victim.[2] Pointing to the jury instructions, the prosecutor also told the jurors that self-defense and justification "d[id]n't apply" because the victim did not have a weapon or otherwise threaten deadly physical force.

¶27 By asserting that Jones could not lawfully defend against another's forceful entry into his vehicle unless the intruder threatened or used deadly force or threatened or used unprovoked physical force, "the prosecutor both mischaracterized the law and compounded the prejudice from the incomplete statement of the law reflected in the instructions given." *Sulu-Kerr*, 256 Ariz. at 540, ¶ 34; *compare Fierro*, 254 Ariz. at 43, ¶¶ 30–31 (concluding no resulting prejudice from an erroneous jury instruction, partly reasoning that the prosecutor "did nothing to exploit" the instruction). "[I]n so doing, the prosecutor essentially relieved the State of the burden of proving [Jones] acted without justification." *Sulu-Kerr*, 256 Ariz. at 540, ¶ 34.

¶28 Given the trial court's failure to instruct on all law vital to a proper consideration of the evidence and the prosecutor's mischaracterization of the law during closing argument, a reasonable jury could have determined that Jones acted without justification if he provoked the verbal altercation, no matter the other evidence. But had the trial court properly instructed on all law vital to a proper consideration of the evidence, including the defense of an occupied vehicle justification under A.R.S. § 13-418, a reasonable jury could have plausibly and intelligently found Jones's conduct to be justified. *See Murray*, 250 Ariz. at 552–53, ¶¶ 31–34 (concluding that a reasonable jury could have reached a different result without the prosecutor's error because the error went the foundation of the defense, which otherwise had considerable evidence to support it).

---

[2] As the reply brief makes clear, Jones does not claim prosecutorial misconduct on appeal. Rather, he contends only that the prosecutor's closing argument exacerbated the instructional error.

Therefore, the omission of an instruction on the defense of an occupied vehicle justification constituted fundamental, prejudicial error.

## II.    Objections to the *Sulu-Kerr* Framework

**¶29**        Without attempting to distinguish *Sulu-Kerr*, the State seemingly concedes that under its framework, the instructions given in this case were deficient. The State argues, however, that *Sulu-Kerr*'s analysis contravenes long-established supreme court precedent. To support this contention, the State points to *Sisson v. State*, 16 Ariz. 170 (1914), *State v. Lee*, 80 Ariz. 213 (1956), and *State v. Gendron*, 168 Ariz. 153 (1991). We consider each in turn.

**¶30**        First, in *Sisson*, the defendant, on trial for grand larceny, admitted to taking the victim's horse but claimed "an honest belief as to his right to take it." 16 Ariz. at 171–72. At the close of evidence, the trial court instructed the jurors that if they determined the defendant "honestly believed" he lawfully could take the animal, "then it [was their] duty to acquit him." *Id.* at 172. The jury convicted the defendant as charged and he appealed, challenging the trial court's final instructions to the jury. *Id.* at 171, 176. On review, the supreme court determined that the "honestly believed" instruction erroneously shifted the burden of proof to the defendant, explaining "reasonable doubt arising" from any of the evidence, not limited to the defendant's testimony, would have been "sufficient to entitle [the defendant] to an acquittal." *Id.* at 173–74. Although the defendant's theory of the case focused on the *mens rea* element of the offense—denying a "felonious intent"—the supreme court upheld the defendant's conviction because careful "scrutiny of the record" revealed that the defendant had requested the instruction, providing the "precise" language. *Id.* at 171–72, 175. While recognizing a "court should, of course, refuse to give an erroneous instruction," the supreme court held that such invited error did not warrant reversal, lest a "clever" defendant persuade a court to give an erroneous instruction only to "decry a result fashioned by his own handiwork" on appeal. *Id.* at 175. The supreme court also rejected the defendant's contention that the trial court erred by omitting unspecified, "special" jury instructions purportedly relevant to the "particular features of the case," noting the defendant never requested them at trial. *Id.* at 176–77. In so doing, the supreme court distinguished between omissions that simply render the instructions given silent on a point of law—described as "nondirection"—and those that render the instructions given inaccurate or misleading—characterized as "misdirection." *Id.* at 176–77.

¶31         Next, in *Lee*, the defendant, on trial for aggravated battery involving serious bodily harm with a deadly weapon, testified "that he acted only in self-defense." 80 Ariz. at 214. Despite his theory of the case, the defendant did not request a self-defense instruction, and the trial court did not provide one to the jury. *Id.* On appeal, the defendant argued the trial court erred by failing "on its own motion to instruct the jury as to self-defense," a challenge the supreme court summarily denied. *Id.* at 215–16.

¶32         More recently, in *Gendron*, the defendant, on trial for unlawful flight from a law enforcement vehicle, aggravated assault, and criminal damage, requested a jury instruction on justification for the unlawful flight charge, predicated on his alleged fear of the arresting officer. 168 Ariz. at 154. The defendant did not, however, "request similar instructions on the aggravated assault or criminal damage charges." *Id.* "In fact, defense counsel expressly disclaimed reliance on a justification defense on all but the unlawful flight charge, and stated that he would not argue the justification instructions on the other counts even if the instructions were given on the unlawful flight count." *Id.* After the trial court refused the requested justification instruction on the unlawful flight count, a jury convicted the defendant on all charges. *Id.* On appeal, the defendant challenged the trial court's failure to provide a justification instruction on the counts of aggravated assault and criminal damage. *Id.* Under fundamental error review, the supreme court explained that an "appellate court should not reverse a case" on a ground not properly raised in the trial court except "[i]n extremely limited circumstances" involving an issue "so important that overriding considerations concerning the integrity of the system will excuse a party's failure to raise the issue in the trial court." *Id.* at 155. Evaluating the omission of the justification instruction "in light of the totality of the circumstances," the supreme court found the justification instruction "implicate[d] no constitutional principles" because the "defendant did not even *assert* a justification defense on the aggravated assault and criminal damage charges. Instead, his defense on those charges was that the officers, not [the] defendant, caused the collisions from which the charges stem." *Id.*

¶33         Contrary to the State's apparent contention, *Sisson*, *Lee*, and *Gendron* do not stand for the proposition that the omission of a jury instruction, absent a specific request, cannot constitute fundamental error. Instead, together, they hold that the omission of an instruction that (1) effectively results in nondirection rather than misdirection and (2) does not undermine the defendant's only declared defense does not amount to fundamental error. *Sulu-Kerr* does not hold otherwise.

¶34 Here, given the evidence presented at trial and the defense's theory of the case, the omission of an instruction on the defense of an occupied vehicle justification rendered the instructions given incomplete and inaccurate. To be clear, had the jury believed Jones's account of the altercation, the instructions given nonetheless required the jurors to convict him because he unquestionably initiated contact with the victim and failed to retreat from that verbal provocation. In other words, the instructions given nullified Jones's sole defense. Thus, the omission of the instruction did not constitute "a mere failure to instruct," *State v. Pulliam*, 87 Ariz. 216, 222 (1960), it made the instructions given misleading.

¶35 The State also objects to the cases relied upon in *Sulu-Kerr* for the proposition that a trial court has an independent duty to accurately instruct the jury on all law vital to a proper consideration of the evidence, even if the defendant does not request such instructions. According to the State, these cases are either no longer viable because they predate *Gendron* or should be limited to their respective facts.

¶36 First, as explained, *Gendron* does not stand for the proposition that a trial court's failure to *sua sponte* give a justification instruction never amounts to fundamental error. Therefore, contrary to the State's contention, it does not overrule earlier cases that hold a court has a duty to instruct on all law vital to a proper consideration of the evidence. Second, the State has not cited, and our review of the relevant cases does not reveal, any language limiting the analysis of those cases to their specific facts or otherwise suggesting that the general principles relied upon have no broader application. *See*, *e.g.*, *Avila*, 147 Ariz. at 337–38; *Almaguer*, 232 Ariz. at 193, ¶ 5; *Edmisten*, 220 Ariz. at 522, ¶ 11.

¶37 We likewise reject the State's contention that *Sulu-Kerr* imposes an onerous and unmanageable burden on trial courts. Although the State repeatedly argues that *Sulu-Kerr* requires trial courts to *sua sponte* instruct jurors on any justification defense "whenever the slightest evidence has been presented," *Sulu-Kerr* does not impose such a duty. Rather, as discussed, *Sulu-Kerr* holds that a trial court must instruct jurors on all law vital to their proper consideration of the evidence, and that its failure to do so, in light of the totality of the circumstances, may constitute fundamental error. *State v. Ganster*, 102 Ariz. 490, 495 (1967) ("In a criminal case a trial judge is obliged to instruct the jury on his own motion upon the law relating to facts of that case and matters vital to a proper consideration of the evidence.").

¶38          In this case, as in *Sulu-Kerr*, defense counsel clearly argued that Jones, as the occupant of a vehicle, had legal justification to defend against the victim's forceful entry of the vehicle insofar as he reasonably believed that the victim posed a threat of imminent harm. But had Jones failed to clearly raise such a defense, or even disclaimed such a defense, well-settled case law would preclude a finding of fundamental, prejudicial error. *See id.* at 494-95 (concluding trial court's failure to *sua sponte* provide a definitional instruction concerning the elements of a crime did not amount to fundamental error because, at trial, defense counsel expressly stated that the defendant did not deny committing the offense, leaving "not guilty by reason of temporary insanity" as "the extent of [the] defense").

¶39          Nor do we find merit to the State's assertion that requiring a trial court to provide a jury with instructions on all law vital to its proper consideration of the evidence will "usurp" a defendant's right to frame his own defense. As demonstrated in this case, a court, upon recognizing that trial evidence clearly supports an instruction that is vital to a proper consideration of the evidence, should, on its own motion, bring the instruction to defense counsel's attention during the settling of final jury instructions. At that point, counsel may freely reject the instruction, and in so doing, foreclose any relief on that basis on appeal. *See State v. Gipson*, 229 Ariz. 484, 486, ¶ 9 (2012) (explaining the duty of a trial court presiding over a capital case to *sua sponte* instruct on all lesser-included offenses supported by the evidence does not preclude the defendant from objecting and waiving any right to the lesser-included instruction).[3]

---

[3]     In *State v. Brown*, 1 CA-CR 23-0123, at *8, ¶ 25 (Ariz. App. Sept. 10, 2024), this court recently held that "trial courts have no *sua sponte* duty to instruct the jury on justification defenses that have not been requested." Notably, in *Brown*, defense "counsel did not argue self-defense or justification" to the jury and even disclaimed such a defense in response to a jury deliberation question asking for instruction on "the laws on self-defense." *Id.* at *3, 7-8. Reasoning that the trial court had no *sua sponte* duty to instruct the jury in *Brown*, this court distinguished *Sulu-Kerr* as not standing for the blanket proposition that a trial court must *sua sponte* instruct jurors on justification if the trial evidence supports such a defense, but for the "common-sense notion that jury instructions given by the court must correctly state the law." *Id.* at * 8, ¶ 24.

**CONCLUSION**

¶40        For the foregoing reasons, we vacate the convictions and sentences and remand for a new trial.

**K I L E Y**, Judge, dissenting:

¶41        At trial, David Jones asked that the jury be instructed on self-defense as set forth in A.R.S. §§ 13-404 and -405.[4] *See* Revised Arizona Jury Instructions ("RAJI") Stand. Crim. 4.04, Justification for Self-Defense (6th ed. 2022); RAJI Stand. Crim. 4.05, Justification for Self-Defense Physical Force (6th ed. 2022). During the settling of jury instructions, the trial court pointed out that "the defendant's testimony . . . might support" an instruction on "defensive display." *See* A.R.S. § 13-421. Jones agreed and requested a "defensive display" instruction as well. *See* RAJI Stand. Crim. 4.21, Justification: Defensive Display of a Firearm (6th ed. 2022). The trial court then asked if Jones requested "[a]ny other justification instructions," to which defense counsel replied, "No, Your Honor." With Jones's agreement, the trial court modified the standard RAJI instructions by deleting certain inapplicable provisions and then instructed the jury on justification in accordance with Jones's requests.

¶42        The majority nonetheless reverses Jones's convictions because, it holds, the trial court erred by failing to *sua sponte* instruct the jurors on a different justification defense, *i.e.*, the "residential structure/occupied vehicle" defense set forth in A.R.S. § 13-418. Because I believe that a trial judge has no duty to assume responsibility for an accused's defense by giving instructions on potential justification defenses

---

[4] The record indicates that instead of filing proposed final jury instructions, defense counsel sent an email to the court and opposing counsel identifying his requested instructions. The email, however, is not included in the appellate record. Although email communication between trial courts and trial counsel has become commonplace in many jurisdictions, judges and attorneys should be mindful that failure to file such emails in the court record may hinder appellate review.

*sua sponte*, the trial court's failure to do so here was not error, much less fundamental error. I respectfully dissent.

¶43 As the majority correctly observes, the Arizona Supreme Court has held that a court commits fundamental error by failing "to instruct on the law relating to the facts of the case," even "if not requested by" the parties, "when the matter is vital to a proper consideration of the evidence." *State v. Avila*, 147 Ariz. 330, 337 (1985). This rule is applied sparingly, however, and for good reason: it runs counter to the premise of our adversarial system that "[t]he litigants are responsible for developing arguments and adducing evidence on which to stake their positions" because "the parties know what is best for them." *Dynometrics Inc. v. Ariz. Dep't of Econ. Sec.*, 257 Ariz. 256, 264, ¶ 34 (App. 2024) (cleaned up); *see also State v. Walker*, 159 Ariz. 506, 510 (App. 1989) (noting that "litigation . . . in a criminal court" involves "two adversaries and a neutral factfinder not responsible for developing the record"); *Fed. Commc'ns Comm'n v. Pottsville Broad. Co.*, 309 U.S. 134, 142 (1940) (noting that unlike administrative proceedings, "conventional judicial modes for adjusting conflicting claims" require "interested litigants [to] define the scope of the inquiry and determine the data on which the judicial judgment is ultimately based"). To shift the obligation for identifying appropriate jury instructions from the parties to the court jeopardizes the integrity of the court's role as impartial arbiter of disputes between contesting parties. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, . . . we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *see also United States v. Tyson*, 653 F.3d 192, 212 (3d Cir. 2011) ("A defendant's strategy is his own," and "[i]t is not for the [trial] court to *sua sponte* determine which defenses are appropriate under the circumstances.").

¶44 An equally important principle of our adversarial system provides that appellants are generally barred from raising new claims and arguments for the first time on appeal. *See State v. Gendron*, 168 Ariz. 153, 155 (1991) ("Our adversarial system properly and necessarily precludes injection of new issues on appeal."). Courts have long held that "[i]n most instances, issues must be raised in the trial court, both to create a record to serve as a foundation for review, and to allow the lower court an opportunity to weigh and decide the issue." *State v. White*, 194 Ariz. 344, 354, ¶ 44 (1999). True, an appellate court will reverse a conviction for trial error to which no timely objection was made if the defendant establishes that the error was both fundamental and prejudicial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Only in "extremely limited circumstances,"

however, will "overriding considerations concerning the integrity of the system . . . excuse a party's failure to raise [an] issue in the trial court." *Gendron*, 168 Ariz. at 155. A defendant seeking to establish fundamental, prejudicial error thus bears a "formidable burden," and will be successful only in the "rare case." *Escalante*, 245 Ariz. at 145, ¶ 35. A claim of fundamental error is not, in other words, "a springboard to reversal where present counsel is simply second-guessing trial counsel." *Gendron*, 168 Ariz. at 155 (citation omitted).

**¶45**　　　　In keeping with the principles on which our adversarial system is based, the Arizona Supreme Court has consistently held that a trial court commits no error by failing to give a justification instruction that no party requested. *See*, *e.g.*, *State v. Blankenship*, 99 Ariz. 60, 68 (1965) (rejecting defendants' claim that "the trial court committed fundamental error in failing to instruct the jury on its own motion . . . as to [the defendants'] right to use force to protect their property"; "[T]his court has repeatedly held that where a defendant desires special instructions, and has neglected to request same, it constitutes a waiver of any right to such admonition."); *State v. Lee*, 80 Ariz. 213, 215-16 (1956) (rejecting, as "contrary" to "well settled" law, defendant's argument that trial court erred by failing "on its own motion to instruct the jury as to self-defense despite defendant's failure to request such an instruction"); *cf. Gendron*, 168 Ariz. at 155 (holding that trial court did not commit reversible error by failing to give justification instruction on aggravated assault and criminal damages where "defendant did not even *assert* a justification defense" on those charges) (emphasis in original). In my view, this binding Supreme Court precedent forecloses Jones's claim here.

**¶46**　　　　The majority suggests, *see supra* ¶ 15, that the Arizona Supreme Court departed from this precedent when it held, in *State v. Carson*, 243 Ariz. 463 (2018), that "once sufficient self-defense evidence is admitted, the absence of self-defense becomes an additional element the state must prove to convict." *Id*. at 466, ¶ 11. In *Carson*, however, the defendant requested a justification instruction, which the trial court denied. *Id*. at 465, ¶ 5. Nothing in *Carson*'s holding that "the trial court must give a self-defense instruction, *if requested* and supported by some evidence," *id*. at 467, ¶ 16 (emphasis added), is inconsistent with prior precedent recognizing that a trial court does not err when it "fail[s] . . . on its own motion to instruct the jury as to self-defense." *Lee*, 80 Ariz. at 215.

**¶47**　　　　In support of its holding, the majority relies on *State v. Sulu-Kerr*, 256 Ariz. 530 (App. 2024), in which this Court held that the trial court committed fundamental, prejudicial error by failing to *sua sponte* instruct

the jurors on the justification defense established by A.R.S. § 13-418. *Id.* at 541, ¶ 37. According to *Sulu-Kerr*, a trial court's "independent duty to instruct jurors on all law vital to a proper consideration of the evidence" includes the duty to *sua sponte* instruct on a statutory justification defense in any case in which the defense's applicability is at least "fairly debatable." *Id.* at 538, ¶¶ 26-27 (citations omitted). Respectfully, I would decline to follow *Sulu-Kerr*, as I believe it cannot be reconciled with the Supreme Court precedents referenced above. *See supra* ¶ 45.

**¶48** Moreover, in my view *Sulu-Kerr* imposes an unwarranted burden on trial judges while incentivizing gamesmanship. Justification defenses, along with attendant exceptions and presumptions, are set forth in numerous statutes whose provisions often overlap.[5] Here, for example, the trial court instructed the jury on the justification defenses set forth in three different justification statutes, *see* A.R.S. §§ 13-404, -405, and -421, finding, correctly, that a reasonable jury could find any or all of them applicable based on the evidence presented at trial. Because only "the slightest evidence" is needed to support a justification instruction, *see Carson*, 243 Ariz. at 466, ¶ 11, *Sulu-Kerr* requires a trial judge to sift through all of the evidence adduced over the course of a trial to determine if any of it could support any of the various justification defenses set forth in any of the multiple justification statutes contained in Title 13, Chapter 4. And a trial court cannot necessarily count on the defendant's help in performing this challenging task because, under *Sulu-Kerr*, the defendant stands to benefit if the court were to inadvertently overlook a potentially applicable justification defense. *Sulu-Kerr*, after all, allows a defendant who took his chances on his preferred jury instructions and was convicted to exploit an overlooked justification instruction to secure a reversal on appeal. By

---

[5] *See* A.R.S. §§ 13-402 ("Justification; execution of public duty"); -403 ("Justification; use of physical force"); -404 ("Justification; self-defense"); -405 ("Justification; use of deadly physical force"); -406 ("Justification; defense of a third person"); -407 ("Justification; use of physical force in defense of premises"); -408 ("Justification; use of physical force in defense of property"); -409 ("Justification; use of physical force in law enforcement") -410 ("Justification; use of deadly physical force in law enforcement"); -411 ("Justification; use of force in crime prevention; applicability"); -412 ("Duress"); -414 ("Justification; use of reasonable and necessary means"); -415 ("Justification; domestic violence"); -416 ("Justification; use of reasonable and necessary means; definition"); -417 ("Necessity defense"); -418 ("Justification; use of force in defense of residential structure or occupied vehicles; definitions"); -421 ("Justification; defensive display of a firearm; definition").

requiring the reversal of a conviction based on the court's failure to give a potentially applicable justification instruction *sua sponte* even when, as here, the court gave all of the instructions that the defendant requested, *Sulu-Kerr* extends fundamental error review beyond its intended scope. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (stating that fundamental error review should not encourage a defendant to "tak[e] his chances on a favorable verdict, reserving the hole card of a later appeal on a matter that was curable at trial, and then seek[] appellate reversal") (cleaned up).

**¶49** The majority denies that *Sulu-Kerr* imposes a duty on trial courts to *sua sponte* instruct jurors on *all* potentially applicable justification defenses, insisting instead that the trial court's duty extends only to instructing on justification defenses that are "vital" to a "proper consideration of the evidence." *See supra* ¶ 37. This distinction, however, offers no meaningful guidance to trial courts endeavoring to adhere to *Sulu-Kerr*'s mandate. By making clear that reversible error will be found if a trial court fails to give an unrequested justification instruction that is deemed, after a conviction, to have been "vital" to the jurors' "proper consideration of the evidence," *Sulu-Kerr* leaves trial judges little choice but to err on the side of caution by instructing jurors *sua sponte* on all justification defenses whose applicability might be considered "fairly debatable." *Sulu-Kerr*, 256 Ariz. at 538, ¶ 27 (citation omitted).

**¶50** Another panel of this Court recently held that "[t]rial courts have no duty to instruct the jury on justification defenses that have not been requested." *State v. Brown*, 1 CA-CR 23-0123, 2024 WL 4131854 at *6, ¶ 30 (Ariz. App. Sept. 10, 2024). Because I believe *Brown* to be consistent with the precedents cited in ¶ 45 above, I would follow *Brown* rather than *Sulu-Kerr*, and so would affirm Jones's convictions and sentences. Such a holding would not, of course, leave Jones with no avenue of potential relief. On the contrary, a claim that his counsel rendered ineffective assistance by failing to request an instruction under A.R.S. § 13-418 is a matter that could be raised and resolved in post-conviction relief proceedings. *See* Ariz. R. Crim. P. 32.1(a).

